No. 25-4066

_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

VICKI COFFEY, on behalf of herself and all others similarly situated,

*Plaintiff-Appellant,*

v.

FAST EASY OFFER LLC, GFSG LLC d/b/a KELLER WILLIAMS REALTY PHOENIX, and KELLER WILLIAMS REALTY, INC.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the District of Arizona (Case No. 24-cv-02725)
The Honorable Steven P. Logan

_____

## EXCERPTS OF RECORD
## VOLUME 1 OF 1

_____

Adam W. Hansen
APOLLO LAW LLC
333 Washington Avenue North
Suite 300
Minneapolis, MN 55401

Emma Freeman
  *Counsel of Record*
APOLLO LAW LLC
275 Park Avenue, Suite A
Brooklyn, NY 11205
emma@apollo-law.com
(646) 363-6766

[*additional counsel listed on inside cover*]

ER-1

Alex D. Kruzyk
PARDELL, KRUZYK & GIRIBALDO, PLLC
7400 Rialto Boulevard
Suite 1-250
Austin, TX 78735

*Counsel for Appellant*

## INDEX

| Document | District Court Docket Number | Excerpts of Record Page Numbers |
|---|---|---|
| Judgment of Dismissal | 28 | 4 |
| Order on Defendants' Motion to Dismiss the Amended Complaint | 27 | 5–13 |
| First Amended Complaint | 19 | 14–36 |
| Notice of Appeal | 29 | 37–38 |
| District Court Docket Sheet | N/A | 39–44 |

ER-3

1
2
3
4
5
6              **IN THE UNITED STATES DISTRICT COURT**
7                 **FOR THE DISTRICT OF ARIZONA**
8
9    Vicki Coffey,                          **NO. CV-24-02725-PHX-SPL**
10              Plaintiff,
                                             **JUDGMENT OF DISMISSAL IN A**
11   v.                                      **CIVIL CASE**
12   Fast Easy Offer LLC, et al.,
13              Defendants.
14

15        **Decision by Court.**   This action came for consideration before the Court.   The
16   issues have been considered and a decision has been rendered.
17        IT IS ORDERED AND ADJUDGED that pursuant to the Court's order filed June
18   5, 2025, Plaintiff to take nothing, and the complaint and action are dismissed with
19   prejudice.
20                                      Debra D. Lucas
21                                      District Court Executive/Clerk of Court
22   June 5, 2025
23                                      s/ Amber Roybal
                              By        Deputy Clerk
24
25
26
27
28

<span style="color:red">**ER-4**</span>

1   **WO**

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                           FOR THE DISTRICT OF ARIZONA

8    Vicki Coffey,                        )    No. CV-24-02725-PHX-SPL
                                          )
9                        Plaintiff,       )
                                          )
10   vs.                                  )    **ORDER**
                                          )
11                                        )
     Fast Easy Offer LLC, et al.,         )
12                                        )
                                          )
13                       Defendants.      )
                                          )
14   _____)

15          Before the Court is Defendants Fast Easy Offer LLC ("FEO"), GFSG LLC d/b/a

16   Keller Williams Realty Phoenix ("KW Phoenix"), and Keller Williams Realty, Inc.'s

17   ("KWRI") joint Motion to Dismiss (Doc. 24); Plaintiff's Response (Doc. 25); and

18   Defendants' Reply (Doc. 26). For the following reasons, the Motion is granted.

19          **I.      BACKGROUND**

20          On October 9, 2024, Plaintiff initiated this putative class action against Defendants

21   alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §

22   227(c), and the Do-Not-Call regulations issued under that statute. (Doc. 1 ¶¶ 102–10). On

23   January 22, 2025, she filed her First Amended Complaint ("FAC") (Doc. 19), which is the

24   operative pleading for purposes of Defendants' Motion to Dismiss.

25          Plaintiff alleges that starting in early 2024, she received "numerous telephone calls

26   and text messages from a rotating series of phone numbers, seeking to solicit Plaintiff to

27   sell her home or engage various entities to represent or assist her in the sale of her home."

28   (Doc. 19 ¶ 20). Despite having registered her cell phone number with the national Do-Not-

Call Registry since 2004, Plaintiff received a minimum of six phone calls and two text messages from a phone number that associated itself with the website https://www.fasteasyoffer.com. (Doc. 19 ¶¶ 19, 25, 27). That website is allegedly operated by Defendant FEO, which is also alleged to share employees and officers with KW Phoenix. (*Id.* ¶¶ 28, 52, 56–60). Plaintiff alleges that FEO and KW Phoenix share revenue from mass telephone call and text message marketing, and that KWRI receives a portion of this revenue from KW Phoenix. (*Id.* ¶¶ 57–60).

The person who made the phone calls and text messages to Plaintiff identified themselves as "Yannick." (*Id.* ¶¶ 21–23). The first text, on September 23, 2024, read, "Hello Vickey, this Yannick the home buyer. Have you given up on selling your . . . property?" (*Id.* ¶ 23). The second text, sent on October 7, read, "Have you given up on selling your property?" (*Id.*). Plaintiff did not recognize the callers and was not looking to sell her home. (*Id.* ¶ 24). When Plaintiff finally spoke with the caller to identify the party responsible for these messages, she was provided a website link to https://www.fasteasyoffer.com, which is how Plaintiff identified the Defendants against which she has now brought suit. (*Id.* ¶¶ 26–27).

In her Amended Complaint, Plaintiff argues that the calls and text messages she received constitute prohibited "telephone solicitations" in violation of the TCPA and its implementing regulations. (*Id.* ¶¶ 124–28). However, Defendants argue that (1) Plaintiff has failed to plausibly allege that the calls or texts were "solicitations" within the meaning of the TCPA, and (2) her claim against KWRI should be dismissed because Plaintiff has failed to plausibly allege that KWRI is directly or vicariously liable under the TCPA. (*See generally* Doc. 24).

## II.    LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is given fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). A court may

ER-6

1    dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1)

2    lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal

3    theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When

4    deciding a motion to dismiss, all allegations of material fact in the complaint are taken as

5    true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*,

6    568 F.3d 1063, 1067 (9th Cir. 2009).

7    **III.   ANALYSIS**

8        **A.   "Telephone Solicitations" Within the Meaning of the TCPA**

9        The TCPA prohibits initiating "more than one telephone [solicitation] within any

10   12-month period" to a "residential telephone subscriber who has registered his or her

11   telephone number on the national do-not-call registry . . . ." 47 U.S.C. § 227(c)(5); 47

12   C.F.R. § 64.1200(c)(2); *see also Whittaker v. Freeway Ins. Servs. Am., Ltd. Liab. Co.*, No.

13   CV-22-8042-PCT-DGC, 2023 U.S. Dist. LEXIS 6018, at *4 (D. Ariz. Jan. 12, 2023).

14   "Telephone solicitation" means "the initiation of a telephone call or message for the

15   purpose of encouraging the purchase or rental of, or investment in, property, goods, or

16   services, which is transmitted to any person . . . ." 47 U.S.C. § 227(a)(4); 47 C.F.R. §

17   64.1200(f)(15). Whether a call constitutes a solicitation "turns on the 'purpose of the

18   message.'" *Whittaker*, 2023 U.S. Dist. LEXIS 6018, at *5 (quoting *Chesbro v. Best Buy*

19   *Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)). The primary "issue before the Court is

20   whether, as a matter of law after accepting all of Plaintiff's allegations as true, Defendants'

21   communications can be considered telemarketing or solicitations under the TCPA." (Doc.

22   25 at 6).

23       Defendants argue that Plaintiff has failed to plausibly allege a solicitation because

24   her alleged caller "wanted to *buy* her home," but did not ask Plaintiff "to herself purchase,

25   rent, or invest in anything." (Doc. 24 at 6 (emphasis added)). Defendants analogize this

26   case to the factually similar case *Jance v. Homerun Offer LLC*, No. CV-20-00482-TUC-

27   JGZ, 2021 WL 3270318 (D. Ariz. July 30, 2021). In that case, the plaintiff received 29

28   calls on his cell phone from a purported "local investor" inquiring if the plaintiff had any

ER-7

interest in selling his property. *Id.* at *1. The caller identified themselves as working for a company called "Homerun Offer," through which the plaintiff was able to identify the defendants against which he ultimately brought suit. *Id.* at *2. The plaintiff in *Jance* brought, *inter alia*, a claim under § 227(c) of the TCPA alleging that the defendants had continuously initiated telephone solicitations despite his requests to be put on the do-not-call list. Chief Judge Zipps found that the definition of "telephone solicitation" within the statute and its implementing regulations did not "encompass[] a scenario in which the caller offers to *buy* something from the recipient of the call." *Jance*, 2021 WL 3270318, at *4 (emphasis added). Because the plaintiff had "allege[d] that the purpose of the calls was to purchase Plaintiff's home, not to induce Plaintiff to make a purchase from the caller," and because the TCPA's definitions of solicitation and telemarketing did "not include offers to purchase," Chief Judge Zipps found that the plaintiff had failed to state a claim under § 227(c) of the TCPA. *Id.*; *see also Hunsinger v. Offer, LLC*, No. 3:21-CV-2846-BH, 2022 WL 18143951, at *5 (N.D. Tex. Dec. 7, 2022), *report and recommendation adopted*, No. 3:21-CV-2846-BH, 2023 WL 122649 (N.D. Tex. Jan. 6, 2023) ("District courts which have considered this issue have generally found that the terms 'telephone solicitation' and 'telemarketing' do not encompass calls for the purpose of offering to purchase something from the recipient, as long as they do not also encourage the recipient to purchase, rent, or invest in the caller's property, goods, or services.") (collecting cases). Defendants argue that this Court should follow *Jance* and *Hunsinger*'s lead in finding that Plaintiff here has failed to state a claim.

Plaintiff, on the other hand, argues that "this overly narrow interpretation of the TCPA is wrong, as it ignores a host of directly on-point authority—much of which involves entities engaging in the exact same conduct as Defendants—in which those courts found that allegations materially identical to Plaintiff's allegations here are sufficient to state a claim for violation of the TCPA." (Doc. 25 at 8). She cites numerous out-of-Circuit cases to support its broader interpretation of "solicitation." (*See* Doc. 25 at 8–11). Plaintiff also emphasizes the Ninth Circuit's commons-sense approach to determining "solicitation"

1    under the TCPA. *See Chesbro*, 705 F.3d at 918 ("Neither the statute nor the regulations

2    require an explicit mention of a good, product, or service where the implication is clear

3    from the context."). Finally, Plaintiff seeks to distinguish *Jance* by pointing out that it was

4    a case brought by a *pro se* litigant "who did not address any of the theories or arguments

5    Plaintiff advances here." (Doc. 25 at 12).

6            However, as Defendants point out, the court in *Jance* correctly focused its analysis

7    on the statutory text of the TCPA and its implementing regulations, noting that the clear

8    "wording is aimed at calls that directly advertise and 'not calls that are related in some

9    attenuated way to advertising or telemarketing the caller intends to conduct in the future.'"

10   *Jance*, 2021 WL 3270318, at *4 (quoting *Knutson v. Blue Light Sec., Inc.*, 17CV134-LAB

11   (JMA), 2018 WL 1172611, at *4 (S.D. Cal. Mar. 6, 2018)). Defendants also note that the

12   Supreme Court has cautioned against reaching past the plain text of the TCPA. *See*

13   *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021) ("This Court must interpret what

14   Congress wrote . . . ."). The TCPA's plain text focuses on calls and messages that

15   encourage the *solicited party's* purchase or rental of, or investment in, property, goods, or

16   services—however, Plaintiff argues that the soliciting Defendants' offer to purchase her

17   home contains within it an implied offer of services; i.e., she argues that the messages,

18   under the guise of a "free" service, were a pretextual attempt to solicit her to work with

19   Defendants for the sale of her home, which would be to Defendants' ultimate pecuniary

20   benefit. As Plaintiff illustrates,

21           [W]hile Defendants may not be charging Plaintiff a line-item
             invoice for services, they nevertheless charge consumers for
22           services via an 'effective fee' that is deducted from the offer
             price. For example, if FEO offers to purchase (1) a $100,000
23           home for $90,000 while providing real estate-related services
             "for free," or (2) that same $100,000 home for $100,000 with
24           a $10,000 service fee, the outcome and impact on the consumer
             is effectively the same.
25

26   (Doc. 25 at 3). Thus, Plaintiff argues that the phone calls and text messages were sent by

27   FEO "either (1) purchase Plaintiff's home to then immediately resell it or reassign the

28   purchase contract to third-party buyers, (2) identify 'motivated home seller' leads to market

                                                    5

1   to third-party homebuyers, or (3) provide conventional real estate representation for seller

2   transactions." (Doc. 25 at 2).

3            Numerous courts in the Ninth Circuit have held that even text messages that are

4   facially informational or offering "free" rewards programs may encourage future purchases

5   and thus constitute telemarketing. *See Chesbro*, 705 F.3d at 918 (holding that calls from

6   Best Buy encouraging plaintiff to redeem his reward points encouraged the listener to make

7   future purchases of Best Buy goods); *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094,

8   1103–04 (D. Ariz. 2024) (finding it plausible that text messages encouraging the plaintiff

9   to sign up for special offers was encouraging plaintiff to make future purchases of goods

10   from defendant); *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2015 WL 431148,

11   at *3 (N.D. Cal. Feb. 2, 2015) (finding it plausible that a text message asking plaintiff to

12   "confirm opt-in" to a rewards list and offering a 10% off coupon was presumably sent to

13   "encourage future purchases" and thus may constitute telemarketing). The trouble,

14   however, is that Defendants' messages did not purport to be "informational" or offer a free

15   rewards program, implicitly encouraging Plaintiff to make future purchases from

16   Defendants—the messages were an offer for *Defendants* to make a future purchase *from*

17   *Plaintiff.*

18            *Chesbro*, the most on-point binding authority, is distinguishable. The Ninth Circuit,

19   approaching the problem "with a measure of common sense," noted that the listener in that

20   case received calls urging him to redeem his Best Buy reward points, directing him to a

21   website where he could further engage with the rewards program, and thanking him for

22   "shopping at Best Buy." *Chesbro*, 705 F.3d at 918. The Court noted that there was "no

23   other use" for the reward points than to go to a Best Buy store and make further purchases.

24   *Id.* Thus, the implication was "clear from the context" that the calls encouraged the listener

25   to make future purchases of goods, products, or services from Best Buy. *Id.* By contrast,

26   even accepting as true Plaintiff's allegations that FEO would ultimately charge Plaintiff an

27   "effective fee" deducted from the offer price if she agreed to sell her home (Doc. 25 at 3),

28   the ultimate result of this alleged solicitation *would not ever require Plaintiff to purchase,*

ER-10

*rent, or invest* in property, goods, or services. *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). In *Chesbro* and the similar line of cases regarding "informational" or "free" rewards-based programs, the soliciting messages were always *ultimately* intended to induce the recipients to purchase something. That is not the case here. *But cf. Anderson v. Catalina Structured Funding, Inc.*, No. 1:21-CV-197, 2021 WL 8315006, at *6 (W.D. Mich. Dec. 21, 2021), *report and recommendation adopted*, No. 1:21-CV-197, 2022 WL 3643733 (W.D. Mich. Aug. 24, 2022) ("Here, though, where Plaintiff has expressed no interest in selling, and Defendant is in the business of offering liquidity to structured settlement holders, Defendant may be offering to make a purchase, but it is also marketing a service. To suggest it is not is too clever by half.").

Furthermore, *Jance* emphasized another key distinction between these "offers to buy" and traditional solicitation messages: the soliciting message must directly advertise, not relate to some potential advertising that the alleged solicitor may want to conduct in the future. *See Jance*, 2021 WL 3270318, at *4. Here, even assuming that Defendants intended to ultimately generate business based on the sale of Plaintiff's home, the messages and calls Plaintiff received relate to future potential advertising. And the fact that Plaintiff was directed to FEO's website, which advertises its real estate services, is not itself dispositive, as "the mere inclusion of a link to a website on which a consumer can purchase a product does not transform the whole communication into a solicitation." *Vallianos v. Schultz*, No. C19-0464-JCC, 2019 U.S. Dist. LEXIS 174729, at *9–10 (W.D. Wash. Oct. 8, 2019). However, on this Court's reading of *Chesbro*, the ultimate dispositive point is not that the messages were only "related in an attenuated way" to potential future advertising or telemarketing, *Knutson*, 2018 WL 1172611, at *4, but rather that they never encouraged Plaintiff "to engage in future purchasing activity" at all—only to engage in future selling activity. *Chesbro*, 705 F.3d at 918.

The Court is sympathetic to Plaintiff's skepticism regarding this buying/selling distinction, especially where the end result is the same: Defendants make money off Plaintiff. It is true that, construing Plaintiff's factual allegations in the most favorable light,

ER-11

were Plaintiff to agree to use FEO's services to sell her house, Defendants would ultimately

benefit from an "effective fee" deducted from the offer price. In that sense, the calls and

texts might constitute "solicitations" in the colloquial sense of the word. But even if, in that

hypothetical scenario, Plaintiff did not make as much money as she might have made

selling her home without FEO's services, she would still be *making* money—and not

spending a cent on purchasing any goods or services from Defendants. The calls and texts

therefore cannot constitute "solicitations" within the plain statutory meaning of the term,

and it is this statutory meaning that must carry the day. Ultimately, Plaintiff's "quarrel is

with Congress, which did not define" solicitation "as malleably as [she] would have liked."

*Cf. Facebook*, 592 U.S. at 409. This Court cannot rewrite what Congress wrote simply to

make the outcome fairer to Plaintiff.

Accordingly, Plaintiff's claim under § 227(c) of the TCPA will be dismissed.

**B.      KWRI's Vicarious Liability**

Defendants request that this Court dismiss Plaintiff's Amended Complaint in its

entirety for failure to state a claim, but in the alternative, it requests that this Court dismiss

Plaintiff's claim against KWRI for failure to plead any plausible basis for vicarious

liability. (Doc. 24 at 18). Because this Court found that Plaintiff's singular TCPA claim

fails as a matter of law, and the Amended Complaint will be dismissed in its entirety, the

Court need not consider Defendants' alternate argument.

**IV.     CONCLUSION**

When granting a motion to dismiss, a court is generally required to grant a plaintiff

leave to amend. *See* Fed. R. Civ. P. 15(a)(2). However, a district court need not grant leave

to amend where a pleading "could not possibly be cured by the allegation of other facts."

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th

Cir. 1990). Here, the Court concludes that amendment would be futile as to Plaintiff's cause

of action under § 227(c). The messages sent to Plaintiff cannot, as a matter of law, be

considered "solicitations" under the TCPA, and Plaintiff's complaint could not be cured

by the allegation of additional facts.

1      Accordingly,

2      **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 24) is **granted** and

3  this case is **dismissed with prejudice**.

4      **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment

5  accordingly and **terminate** this action.

6      Dated this 5th day of June, 2025.

7

8

9                                  Honorable Steven P. Logan
                                 United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ER-13

1  Alex D. Kruzyk (*pro hac vice*)
   akruzyk@pkglegal.com
2  Bryan A. Giribaldo (*pro hac vice*)
3  bgiribaldo@pkglegal.com
   **PARDELL, KRUZYK & GIRIBALDO, PLLC**
4  7500 Rialto Blvd. Suite 1-250
5  Austin, Texas 78735
   Tele: (561) 726-8444
6
7  *Counsel for Plaintiff and the proposed Class*

8                UNITED STATES DISTRICT COURT
9                  DISTRICT OF ARIZONA

10
11 Vicki Coffey, on behalf of herself and all        )
   others similarly situated,                        ) Case No. 2:24-cv-02725-SPL
12                                                    )
                                     Plaintiff,       ) **FIRST AMENDED CLASS ACTION**
13                                                    ) **COMPLAINT**
          vs.                                         )
14                                                    ) **JURY TRIAL DEMANDED**
15 Fast Easy Offer LLC, GFSG LLC d/b/a                )
   Keller Williams Realty Phoenix, and               )
16 Keller Williams Realty, Inc.,                      )
                                                      )
17                                   Defendants.      )
                                                      )
18 _____                  )
19
20
21
22
23
24
25
26
27
28

ER-14

**Nature of this Action**

1.     Vicki Coffey ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Fast Easy Offer LLC ("FEO"), GFSG LLC d/b/a Keller Williams Realty Phoenix ("KW AZ"), and Keller Williams Realty, Inc. ("KW National," and collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2.     Upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing call or text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

**Parties**

3.     Plaintiff is a natural person who at all relevant times resided in Gilbert, Arizona.

4.     KW National is a Texas corporation with its principal place of business in Austin, Texas.

5.     KW National operates nationally through selling franchisee rights to various real estate businesses, including real estate businesses in Arizona.[1]

6.     KW AZ is an Arizona limited liability company that runs a real estate business headquartered in Tempe Arizona.

7.     FEO is an Arizona limited liability company that runs a real estate business headquartered in Mesa, Arizona.

8.     FEO's principal office and headquarters is located at 4862 E Baseline Rd #103, Mesa, AZ 85206.

9.     Brett Tanner is the statutory agent for FEO, and through his company Ignition Ventures, LLC, is a member of FEO.

---

[1] *See* https://kwri.kw.com/open-a-franchise/ (last visited January 22, 2025).

ER-15

10.    According to the Arizona Department of Real Estate, Mr. Tanner is a licensed Arizona real estate salesperson, and his license is affiliated with KW AZ.

11.    Upon information and belief, KW AZ's "Keller Williams Realty Phoenix" is a franchisee of KW National.

12.    Upon information and belief, KW AZ shares an office with FEO at 4862 E Baseline Rd #103, Mesa, AZ 85206.

## Jurisdiction and Venue

13.    This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(1)(a)(iii), and 28 U.S.C. § 1331.

14.    Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) as a significant portion of the events giving rise to this action occurred in this district.

15.    In particular, the solicitation calls and text messages to Plaintiff's telephone number originated from this district, and Plaintiff received the solicitation calls and text messages in this district.

## Factual Allegations

16.    Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(480) 231-XXXX.

17.    Plaintiff uses her cellular telephone as her personal residential telephone number.

18.    In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

19.    Plaintiff registered her cellular telephone number with the DNC Registry on November 8, 2004, and has maintained that registration through the present date.

20.    Starting, in early 2024, Plaintiff received numerous telephone calls and text messages from a rotating series of phone numbers, seeking to solicit Plaintiff to sell her home or engage various entities to represent or assist her in the sale of her home.

ER-16

21.    Although most of these entities did not disclose their identity or use any caller identification that disclosed their identity, Plaintiff received at least the following calls from Defendants in September, 2024:



22.    The person who made these calls identified themselves as "Yannick."

First Amended Class Action Complaint - 4

ER-17

23.     In addition to these calls, "Yannick" sent text messages to Plaintiff's telephone number from the (480) 648-3851 telephone number:



24.     Plaintiff did not recognize the callers, is (and was) not selling her home, and was not looking to sell her home.

25.     Upon information and good faith belief, Plaintiff received a minimum of six calls, and two text messages, from (480) 648-3851.

26.     After receiving multiple calls and text messages from Defendants from different telephone numbers, Plaintiff spoke with the caller solely to identify the entity responsible for delivering these calls and text messages.

27.     When asked for some sort of identification after Defendants delivered the unsolicited calls and text messages, Defendants provided a website link to https://www.fasteasyoffer.com.

28.     Upon information and belief, https://www.fasteasyoffer.com is owned and operated by FEO.

29.     This website, https://www.fasteasyoffer.com, explains that FEO seeks to purchase and resell residential real estate.

First Amended Class Action Complaint - 5

ER-18

30.    FEO describes itself as follows: "We are a local real estate solutions company based out of Mesa. We're a family-owned business with a focus on helping homeowners like you find solutions to any problem. Whether you're going through a foreclosure, can't sell your property, or just need to sell your house fast, Fast Easy Offer can help."[2]

31.    FEO continues: "We are a real estate solutions and investment firm that specializes in helping homeowners sell their property. We are investors and problem solvers who can buy your house fast with a fair all cash offer."[3]

32.    More specifically, upon information and belief, FEO is a real estate wholesaler, which is a strategy in which a wholesaler seeks to (1) persuade a homeowner to sell their home to the wholesaler at a substantial discount below fair market value, in exchange for a suite of services to ease the sale, then (2) prior to completing the purchase, remarket the property to third-party purchasers or investors, to (3) assign or sell the contract to that investor for a substantial premium, thereby allowing the investor to step into FEO's shoes and acquire the house instead, with the difference in price solely allocated to FEO (or Defendants) as profit, instead of the homeowner.[4]

33.    An anonymous review from a former "Wholesale Acquisitions Specialist" on GlassDoor indicates that employees from FEO make 700-1000 cold calls a day, for "8 hours a day":[5]

---

[2]    https://www.fasteasyoffer.com/our-company/ (last visited January 22, 2025).

[3]    https://www.fasteasyoffer.com/privacy/ (last visited January 22, 2025).

[4]    https://www.fasteasyoffer.com/our-company/ (last visited January 22, 2025) ("Specializing in wholesaling property, flipping investment properties, packaging creative financing deals, rental portfolio development, Joe has led Fast Easy Offer to grow into one of the largest wholesale businesses nationwide.").

[5]    https://www.glassdoor.com/Reviews/Fast-Easy-Offer-Reviews-E7894137.htm (last visited January 22, 2025).

ER-19

**Meh**

Wholesale acquisitions specialist

Former employee, less than 1 year          Phoenix, AZ

✗ Recommend      ○ CEO approval      ✗ Business outlook

**Pros**
Great group of people and great environment. Expect it to be a very slow first few months and expect to be making only cold calls at first.

**Cons**
The job description does not entail the true duties you will be doing, I did not expect to be making this many calls nor was a wanting to do so. Expect to be making straight cold calls for 8 hours a day for the first few months. 700-1000 phone calls per day on average . Only intake to make leads are cold calling. Commission only, no benefits.

**Advice to Management**
Better hands on training instead of relying on a handbook.

34.     FEO's website also advertises that they pair numerous services with their offers to purchase properties from consumers.

35.     Implicit among these service offerings is the arranging of title, escrow, preparing paperwork, and all other ancillary services associated with the purchase or sale of a home.

36.     For example, FEO indicates that "[b]efore our meeting at your property, we do a comprehensive market analysis (CMA) on your home to determine what the market value of the property will be once it is completely renovated and brought up to today's HGTV standards."[6]

37.     FEO also represents that "[i]f you agree to the offer, we'll arrange a closing with a reputable attorney, and your home will be sold. It's as simple as that. We'll work according to your timeline and handle all the necessary details on your behalf. When the closing day arrives, all you have to do is show up, sign the paperwork, and within hours, you'll receive your cash."[7]

---

[6]     https://www.fasteasyoffer.com/how-we-buy-houses/ (last visited January 22, 2025).

[7]     *Id.*

ER-20

38.     And, upon information and belief, in exchange for providing these services, FEO seeks to acquire Plaintiff's—and other consumers'—homes at below fair market values, to then re-sell or re-assign to a third-party purchaser for profit.

39.     In other words, consumers such as Plaintiff would pay an effective fee to FEO for their numerous ancillary services through FEO's payment of a reduced purchase price to those consumers.

40.     In fact, FEO explicitly spells this out in their website, noting that they formulate offers as follows:

**[Your Offer]** = [After Repair Value] – [Repair Costs] – [Our Selling Costs] – [Our Minimum Profit][8]

41.     The "selling costs" are explicitly described to include various closing costs that are typically part of a real estate transaction: "agent fees, closing costs, taxes, holding costs, etc."[9]

42.     Thus, upon information and belief, FEO seeks to supplant the role of a traditional real estate agent while providing the same services as a real estate agent, and in exchange for doing so, are compensated by obtaining a homeowner's property at a reduced price, and thereafter selling it at an inflated price.

43.     As a result, FEO would be (and, upon belief and information, is) compensated for their services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

44.     In fact, based on representations made by KW National through its promotional videos featuring Mr. Tanner, FEO appears to also provide, or arrange for KW AZ or KW National agents to provide, traditional real estate representation for consumers who respond to FEO's solicitations.

---

[8]     *Id.*
[9]     *Id.*

First Amended Class Action Complaint - 8

ER-21

45.    Specifically, in a video titled "KW Wealth Helps Agents Succeed | Essential Tips for Real Estate Agents," hosted by KW National, Mr. Tanner touted that when soliciting consumers to sell homes to him (or FEO) directly, "9 out of 10 of them, we can't, but you know what those leads are perfect for? The team. So those leads route to the team, we go list all those, and the game goes on."[10]

46.    In other words, when FEO sends its cold call solicitations to homeowners, it seeks to either 1) wholesale the home, raising the issues discussed *supra* ¶¶ 34-43; or 2) provide traditional real estate representation as a seller's agent through the use of KW AZ and KW National real estate agents.

47.    This hybrid wholesaler/representation conduct is particularly problematic given that the FCC has specifically concluded that Defendants' conduct qualifies as a "solicitation" under the TCPA when performed by real estates.

48.    Specifically, in 2005, the National Association of Realtors petitioned the FCC for an exemption from the Do-Not-Call rules' definition of "solicitation" for calls made by real estate agents to property owners with lapsed real estate listings, where the real estate agent solicits their services to a prospective seller. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005).

49.    In interpreting the definition of "telephone solicitation," the FCC rejected this exemption, and concluded "that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *Id.* at 3793-94.

50.    As a result, Defendants' conduct fits squarely within the TCPA's definition of telemarketing or solicitation, as reinforced by the FCC.

---

[10]    https://youtu.be/LcBpWq1c5vI?si=CVAPatV35-MIwhm1&t=358   (last   visited January 22, 2025) (excerpted language at 6:55-7:04).

ER-22

51.     Public consumer reviews corroborate FEO's wholesaling and mass telemarketing efforts:[11]





---

[11]    *See* https://www.google.com/search?q=Fast+easy+offer+reviews&sca_esv=4b629c57e28de7e7&sxsrf=ADLYWIK5Ss_vt9Uo18bZ3if0fh3BC7Y2-Q%3A1728411000248&ei=eHUFZ4b2DsLIwN4P8eymSA&ved=0ahUKEwiGksjdsP-IAxVCJNAFHXG2CQkQ4dUDCA8&uact=5&oq=Fast+easy+offer+reviews&gs_lp=Egxnd3Mtd2l6LXNlcnAiF0Zhc3QgZWFzeSBvZmZlciByZXZpZXdzMgoQIxiABBgnGIoFMhEQLhiABBiRAhjHARiKBRivATILEAAYgAQYYhgMYigUyCxAAGIAEGIYDGIoFMggQABiiBBiiBDIIEAAYogQYiQUyCBAAGIAEGIMMggQABiABBiiBBiiBDIgEC4YgAQYkQIYxwEYigUYrwEYlwUY3AQY3gY4ATYAQFI5wVQjgNYjgNwAngBkAEAmAFloAFlqgEDMC4xuAEDyAEA-AEBmAIDoAJ1wgIKEAAYsAMY1gQYR5gDAIgGAZAGCLoGBggBEAEYFYFJIHAzIuMaAH9gg&sclient=gws-wiz-serp#    (last    visited    January    22,    2025); https://www.bbb.org/us/az/mesa/profile/real-estate-investing/fast-easy-offer-1126-1000049958/customer-reviews (last visited January 22, 2025).

ER-23

52.     Upon information and belief, FEO and KW AZ share employees and offices.[12]

53.     FEO's team photo on its website shows one or more of KW AZ's real estate agents or employees, including Mr. Tanner.[13]

54.     Additionally, Google Maps searches of FEO's listed address show that the listed name of the suite is KW AZ's business name: Keller Williams Realty Phoenix.

55.     Upon information and belief, if FEO does not wholesale a given property, FEO instead utilizes KW AZ's licensed real estate professionals to list properties for sale.

56.     Upon information and belief, given the overlap between FEO and KW AZ, KW AZ has knowledge of, and control of, FEO's operations.

57.     Upon information and belief, KW AZ's control over FEO's operations extends to FEO's telemarketing operations.

58.     Upon information and belief, KW AZ operates or partners with FEO as part of its real estate wholesaler operations, including directing, or causing, FEO to mass market to consumers via telephone call and text message campaigns.

59.     Alternatively, KW AZ knew or should have known that FEO mass marketed to consumers via telephone call and text message campaigns as part of FEO's efforts to perform real estate wholesale operations on behalf of KW AZ, and KW AZ knowingly accepted the benefits of FEO's telemarketing operations and ratified FEO's conduct.

60.     Furthermore, upon information and belief, KW AZ and FEO share revenue resulting from these efforts, and KW National receives a percentage of the revenue obtained by KW AZ.

---

[12]     *See, e.g.*, https://www.indeed.com/cmp/Brett-Tanner-Team-Fast-Easy-Offer (last visited October 8, 2024) (displaying real estate agent and sales positions).

[13]     https://www.fasteasyoffer.com/our-company/ (last visited January 22, 2025).

ER-24

61.    Upon information and belief, FEO and KW AZ's scheme of utilizing a "cash buyer" to wholesale real estate along with a traditional real estate operation is propagated on a national level by KW National.

62.    In fact, KW National offers a paid subscription program called "KW Wealth," which is ran by Mr. Tanner, to help build the wealth of Keller Williams' real estate agents.[14]

63.    Upon information and belief, KW National runs and owns KW Wealth.

64.    Upon information and belief, this educational program is to teach KW National's agents how to start up wholesaling businesses, like FEO, as a supplemental source of income to more-traditional real estate representation.

65.    By actively promoting this program to their national roster of agents, lending their trade name and resources, and providing KW Wealth training, technology, and promotional materials, KW National is either directly responsible for sending the communications at issue, or ratified Mr. Tanner's wholesaling business model exemplified by FEO and KW AZ.[15]

66.    Upon information and belief, KW National's KW Wealth program is tied to, or incorporates, Mr. Tanner's "Be Wealthy" training and education program.[16]

---

[14]    https://outfront.kw.com/performance/keller-williams-introduces-kw-wealth-to-help-real-estate-agents-achieve-50-million-in-net-worth/ (last visited January 22, 2025) ("That's why we partnered with renowned real estate investor Brett Tanner to launch KW Wealth. Brett and his team have cracked the code to achieving $50 million in personal net worth. Over the course of their workshops, community members will learn, in detail, how to find and capitalize on investment opportunities, run the right numbers for their goal, grow in a network of like-minded peers, and earn incredible 'behind the rope' access to thought leaders in the wealth space."); *see also* KW Wealth Community Terms and Conditions, attached hereto as Exhibit A.

[15]    https://communities.kw.com/community/kw-wealth/ (last visited January 22, 2025); *see also* https://thrive.kw.com/technology/ (last visited January 22, 2025) (touting the lead generation and technology platforms KW Wealth provides to its franchisees and agents).

[16]    https://bewealthy.com/training/ (last visited January 22, 2025).

First Amended Class Action Complaint - 12

ER-25

67.     Notably, the operations team for "Be Wealthy," and thus KW Wealth, includes Mr. Tanner, Katelyn Mitchell, Sabrina Song, Melissa Goslin, and Joe Dunseath, all of whom are *also* depicted on FEO's website.[17]

68.     KW National notes that its KW Wealth team employs Mr. Tanner as "Head Coach," Ms. Mitchell as an "Operations Coach," Ms. Song as an "Operations Coach," Ms. Goslin as a "Hard Money Lending/Wholesale Coach," and Mr. Dunseath as an "Investment/Wholesale Coach."[18]

69.     Furthermore, Mr. Tanner, Ms. Goslin, and Ms. Song are all listed on KW AZ's agent roster.[19]

70.     Moreover, according to the Arizona Department of Real Estate, in addition to Mr. Tanner, Ms. Goslin and Ms. Song are each current agents affiliated with KW AZ, and Mr. Dunseath was previously a KW AZ agent, but terminated that license in 2018.

71.     Therefore, upon information and belief, the KW Wealth program includes instruction and education over wholesaling activities similar to those conducted by FEO.[20]

72.     Upon information and good faith belief, KW Wealth is, at its core, designed to facilitate Keller Williams-affiliated agents using their status as real estate agents to become real estate investors through wholesaling and solicitation, just as FEO did here.

73.     Specifically, KW Wealth states that it will provide the tools to agents, and train them, on "how to bring in deals, evaluate them for maximum profit, and do this all

---

[17]     *Compare* https://bewealthy.com/meet-the-team/ (last visited January 22, 2025) *with* https://www.fasteasyoffer.com/how-we-buy-houses/ (last visited January 22, 2025).

[18]     *Id.*

[19]     https://phoenix.kw.com/our-agents?p=3 (last visited January 22, 2025); https://phoenix.kw.com/our-agents?p=8 (last visited January 22, 2025).

[20]     *See* https://bewealthy.com/training/ (last visited January 22, 2025) (changed since October 8, 2024, but previously discussing various aspects of wholesaling and "wholetailing", including marketing and setting up such businesses).

ER-26

on a consistent basis. The #1 way to find the best deals for your portfolio – make it a business."[21]

74.     KW Wealth also touts that it is designed for "[p]eople who want a clear way to step away from the daily grind of real estate and into the management of investments for income streams."[22]

75.     Therefore, the entire purpose of KW Wealth is to train and facilitate Keller Williams-affiliated agents to engage in real estate wholesaling and private transactions, just as FEO did here.

76.     In one video hosted by KW National, in a "Live Q&A" with Mr. Tanner and Lalaina Rabary, who upon information and belief was Director of Strategic Communications at KW National, Mr. Tanner discusses how he (and FEO), using techniques and the approaches touted by KW Wealth, could "change the mindset" about "ibuyers"[23] and to "be your own ibuyer," and that real estate agents "overlook" opportunities to "take advantage" of opportunities to buy homes from consumers for substantial discounts, rather than offer conventional real estate representation.[24]

---

[21]     https://www.mykwwealth.com/coaching/#kw-wealth-community (last visited January 22, 2025).

[22]     https://www.mykwwealth.com/kw-wealth-mastermind/ (last visited January 22, 2025).

[23]     https://www.zillow.com/learn/what-is-an-ibuyer/ ("An iBuyer is a company that buys homes almost instantly by relying on technology to determine a market-based cash offer. iBuyers complete the purchase transaction online, often sight unseen, which means the homeowner gets to sell their home in a quick sale while skipping a lot of steps in the traditional home-selling process.") (last visited January 22, 2025).

[24]     https://www.facebook.com/KellerWilliamsRealty/videos/412189454015428 (last visited January 22, 2025) (at 4:40-7:00); *see also* https://www.facebook.com/share/p/1KrvxS3BsS/ (advertising the above-referenced Q&A by stating: "Join us for a conversation with Brett Tanner - Director of KW's newest community, KW Wealth and Team Owner of Elite Home Advisors and Lalaina Rabary, KWRI Director of Strategic Communications.") (last visited January 22, 2025).

77.     In that video, Mr. Tanner touts how a Keller Williams real estate agent, after obtaining the training and "tools" offered by KW National's KW Wealth program, converted a conventional real estate listing into an "opportunity" to purchase the home from the homeowner directly and then flip it for $55,000 profit, for the agent's benefit rather than the homeowner's.[25]

78.     By virtue of KW National's KW Wealth program and ongoing efforts to propagate supplemental wholesaling business models on its agents, KW National is either directly responsible for sending the communications at issue, or ratified FEO's conduct of wholesaling through mass telemarketing.

79.     Moreover, given that FEO—which is run by the leader of KW National's KW Wealth program—engaged in the telemarketing and solicitation campaign at issue here in direct furtherance of KW Wealth's stated goals, and using the techniques and tools promoted by and facilitated by KW Wealth, FEO acted with KW National's apparent and actual authority in sending the messages at issue.

80.     Because KW National directs its KW Wealth participants for techniques and tools to directly solicit homeowners to sell their properties to Keller Williams-affiliated agents, KW National endorsed or directed FEO to send the text messages and calls at issue.

81.     And, given that Mr. Tanner (and therefore, FEO) acknowledge that they provide conventional real estate representation to homeowners that were not interested in selling directly to him (or FEO), FEO was sending the text messages and calls for KW AZ and KW National's ultimate benefit.

82.     Because KW National knew and actively promoted Mr. Tanner (and FEO's) conduct, and encouraged other Keller Williams-affiliated real estate agents to adopt the same processes, and because KW National ratified FEO's telemarketing and solicitation efforts.

---

[25]     *Id.*

ER-28

83.     Upon information and good faith belief, KW National profits on Defendants' telemarketing and solicitation campaign in two ways: 1) for any conventional real estate representation, as discussed *supra* ¶¶ 45-46, KW National receives a 6% fee on each transaction, capped at $3,000;[26] and 2) KW National charges a subscription fee to any agents who use its KW Wealth program—between $199.00 a month and $1,000/month[27]—which provides training, promotional materials, and technological support for its affiliate agents who engage in such "real estate wholesaling" telemarketing.

84.     Plaintiff did not give Defendants prior express consent or prior express written consent to deliver calls or text messages to her cellular telephone number.

85.     The calls and text messages at issue were sent for non-emergency purposes.

86.     Upon information and good faith belief, the calls and text messages at issue were delivered by Defendants voluntarily.

87.     The purpose of the calls and text messages at issue was to advertise and to market Defendants' business or services.

88.     Additionally, upon information and belief, Defendants also collect motivated seller consumer data and resell that information to investors, including by way of executing assignment contracts.

89.     As a result, Defendants: (1) solicited Plaintiff to sell her home to them at a discount in order for Defendants to resell or rent Plaintiff's home; (2) solicited Plaintiff to submit her information to Defendants' lead generation service and, if Plaintiff expressed an interest in selling her home, Defendants would then sell that via an assignment contract to investors for a profit; or (3) Defendants solicited Plaintiff to, as an alternative to wholesaling her home, having Plaintiff utilize one of Defendants' traditional real estate agents to list that home for same.

---

[26]     https://www.youdrivethesuccess.com/keller-williams-commission-split/ (last visited January 22, 2025).

[27]     https://answers.kw.com/hc/en-us/articles/12986454322707-KW-Wealth-Community-FAQs (last visited January 22, 2025).

ER-29

90.    Plaintiff did not give Defendants prior express invitation or permission to deliver advertisement or marketing calls or text messages to her cellular telephone number.

91.    Plaintiff suffered actual harm as a result of the calls and text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

92.    Plaintiff suffered additional harm due to her frustration and difficulty in identifying the entity and persons responsible for the unwanted advertisement or marketing calls and text messages to her cellular telephone number.

93.    Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

**Class Action Allegations**

94.    Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class (the "Class"):

> All persons throughout the United States (1) to whom Fast Easy Offer LLC, GFSG LLC d/b/a Keller Williams Realty Phoenix, or Keller Williams Realty, Inc. delivered, or caused to be delivered, more than one telephone call or text message within a 12-month period, promoting Fast Easy Offer LLC's, GFSG LLC d/b/a Keller Williams Realty Phoenix's, or Keller Williams Realty, Inc.'s, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Fast Easy Offer LLC, GFSG LLC d/b/a Keller Williams Realty Phoenix, or Keller Williams Realty, Inc. delivered, or caused to be delivered, at least two of the telephone calls or text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

95.    Excluded from the Class is Defendants, their officers, directors, managers, and members, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

96.    Upon information and belief, the members of the Class are so numerous that

First Amended Class Action Complaint - 17

ER-30

joinder of all of them is impracticable.

97.    The exact number of members of the Class is unknown to Plaintiff at this time and can be determined only through appropriate discovery.

98.    The members of the Class are ascertainable because the Class is defined by reference to objective criteria.

99.    In addition, the members of the Class are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

100.    Plaintiff's claims are typical of the claims of the members of the Class.

101.    As it did for all members of the Class, Defendants delivered solicitation telephone calls or text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her cellular telephone number with the DNC Registry.

102.    Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice, and procedure on the part of Defendants.

103.    Plaintiff's claims are based on the same theories as are the claims of the members of the Class.

104.    Plaintiff suffered the same injuries as the members of the Class.

105.    Plaintiff will fairly and adequately protect the interests of the members of the Class.

106.    Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class.

107.    Plaintiff will vigorously pursue the claims of the members of the Class.

108.    Plaintiff has retained counsel experienced and competent in class action litigation.

109.    Plaintiff's counsel will vigorously pursue this matter.

110.    Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

ER-31

111.    The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class.

112.    Issues of law and fact common to all members of the Class are:

    a.    Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing telephone calls or text messages;

    b.    For the Class, Defendants' practice of delivering telephone calls or text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

    c.    Whether KW AZ is responsible for the conduct of FEO based on agency theories;

    d.    Whether KW National is responsible for the conduct of FEO based on agency theories;

    e.    Defendants' violations of the TCPA; and

    f.    The availability of statutory penalties.

113.    A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

114.    If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.

115.    The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their ability to protect their interests.

116.    The pursuit of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

117.    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.

ER-32

118.    The damages suffered by the individual member of the Class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Class to redress the wrongs done to them.

119.    The pursuit of Plaintiff's claims, and the claims of the members of the Class, in one forum will achieve efficiency and promote judicial economy.

120.    There will be no extraordinary difficulty in the management of this action as a class action.

121.    Defendants acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Class**

122.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-121.

123.    A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

124.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

125.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

126.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed

ER-33

under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

127.    Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

128.    Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Class, more than one solicitation telephone call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

129.    In the alternative, FEO violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, and KW AZ and KW National are liable for FEO's violations because (1) they ratified FEO's conduct by either accepting leads generated by FEO's telemarketing campaign, agreeing to share revenue with FEO (or, in the case of KW National, KW AZ) that arose out of that telemarketing campaign, and promoting, educating, and instructing agents to build wholesaling businesses that rely on unsolicited telemarketing, like FEO; or (2) FEO acted with actual authority on behalf of KW AZ and KW National in telemarketing to consumers who registered their respective cellular or residential telephone numbers on the DNC Registry without obtaining prior express written consent.

130.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Class, are entitled to damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

ER-34

a.    Determining that this action is a proper class action;

b.    Designating Plaintiff as a class representative of the class under Federal Rule of Civil Procedure 23;

c.    Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d.    Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e.    Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation telephone calls and text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f.    Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

g.    Awarding Plaintiff and the members of the Class treble damages under 47 U.S.C. § 227(c)(5)(C);

h.    Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i.    Awarding Plaintiff and the members of the Class any pre-judgment and post-judgment interest as may be allowed under the law; and

j.    Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: January 22, 2025.          By:*/s/ Alex D. Kruzyk*_____
                                  Alex D. Kruzyk (*pro hac vice*)
                                  akruzyk@pkglegal.com
                                  Bryan A. Giribaldo (*pro hac vice*)
                                  bgiribaldo@pkglegal.com
                                  **Pardell, Kruzyk & Giribaldo, PLLC**

ER-35

7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444

*Counsel for Plaintiff and the proposed Class*

ER-36

Alex D. Kruzyk (*pro hac vice*)
akruzyk@pkglegal.com
Bryan A. Giribaldo (*pro hac vice*)
bgiribaldo@pkglegal.com
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444

*Counsel for Plaintiff and the proposed Class*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Vicki Coffey, on behalf of herself and all others similarly situated, | ) Case No. 2:24-cv-02725-SPL |
| Plaintiff, | ) **PLAINTIFF'S NOTICE OF APPEAL** |
| vs. | ) |
| Fast Easy Offer LLC, GFSG LLC d/b/a Keller Williams Realty Phoenix, and Keller Williams Realty, Inc., | ) |
| Defendants. | ) |

ER-37

1        Notice is hereby given that Plaintiff Vicki Coffey, on behalf of the proposed class,

2    and by and through her undersigned counsel, hereby appeals to the United States Court of

3    Appeals for the Ninth Circuit the district court's June 5, 2025 final judgment, ECF No.

4    28, together with all interlocutory orders that merged into the final judgment, including

5    the district court's Opinion and Order granting the defendants' motion to dismiss, ECF

6    No. 27, entered in this action on June 5, 2025.

7        Date: June 27, 2025.    By:*/s/ Alex D. Kruzyk*

8        Alex D. Kruzyk (*pro hac vice*)
    akruzyk@pkglegal.com

9        Bryan A. Giribaldo (*pro hac vice*)
    bgiribaldo@pkglegal.com

10       **Pardell, Kruzyk & Giribaldo, PLLC**

11       7500 Rialto Blvd. Suite 1-250
    Austin, Texas 78735

12       Tele: (561) 726-8444

13

14       *Counsel for Plaintiff and the proposed Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

<span style="color:green">APPEAL,CLOSED,STD</span>

# U.S. District Court
## DISTRICT OF ARIZONA (Phoenix Division)
## CIVIL DOCKET FOR CASE #: 2:24-cv-02725-SPL

Coffey v. Fast Easy Offer LLC et al
Assigned to: Judge Steven P Logan
Case in other court:  Ninth Circuit, 25-04066
Cause: 47:227 Restrictions of Use of Telephone Equipment

Date Filed: 10/09/2024
Date Terminated: 06/05/2025
Jury Demand: Plaintiff
Nature of Suit: 485 Telephone Consumer
Protection Act (TCPA)
Jurisdiction: Federal Question

**Plaintiff**

**Vicki Coffey**
*on behalf of herself and all others similarly
situated*

represented by **Alexander Kruzyk**
Pardell Kruzyk & Giribaldo PLLC
7500 Rialto Blvd., Ste. 1-250
Austin, TX 78735
737-310-3210
Email: akruzyk@pkglegal.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bryan A Giribaldo**
Pardell Kruzyk & Giribaldo PLLC
7500 Rialto Blvd., Ste. 1-250
Austin, TX 78735
737-310-3211
Email: bgiribaldo@pkglegal.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Fast Easy Offer LLC**

represented by **Colin Matthew Proksel**
Osborn Maledon PA - Phoenix
2929 N Central Ave., Ste. 2000
Phoenix, AZ 85012
602-640-9000

ER-39

Email: cproksel@omlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**GFSG LLC**
*doing business as*
Keller Williams Realty Phoenix

represented by **Anthony Tom King**
Snell & Wilmer LLP - Phoenix, AZ
1 E Washington St., Ste. 2700
Phoenix, AZ 85004
602-382-6513
Email: aking@swlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Michael Cool**
Frazer Ryan Goldberg & Arnold LLP
1850 N Central Ave., Ste. 1800
Phoenix, AZ 85004
602-277-2010
Fax: 602-277-2595
Email: jcool@frgalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Keller Williams Realty Incorporated**

represented by **Anthony Tom King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Archis Ashok Parasharami**
Mayer Brown LLP - Washington, DC
1999 K St. NW
Washington, DC 20006
202-263-3000
Email: aparasharami@mayerbrown.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher J Mikesh**
Mayer Brown LLP - New York, NY
1221 Avenue of the Americas
New York, NY 10020-1001
212-506-2435
Email: cmikesh@mayerbrown.com
*LEAD ATTORNEY*

ER-40

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel E Jones**
Mayer Brown LLP - Washington, DC
1999 K St. NW
Washington, DC 20006
202-263-3860
Email: djones@mayerbrown.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew David Ingber**
Mayer Brown LLP - New York, NY
1221 Avenue of the Americas
New York, NY 10020-1001
212-506-2373
Email: mingber@mayerbrown.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Megan M Carrasco**
Snell & Wilmer LLP - Phoenix, AZ
1 E Washington St., Ste. 2700
Phoenix, AZ 85004
602-382-6092
Fax: 602-382-6070
Email: mcarrasco@swlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/09/2024 | 1 | COMPLAINT. Filing fee received: $405.00, receipt number AAZDC-23551151 filed by Vicki Coffey. (submitted by Alexander Kruzyk) (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(REK) (Entered: 10/09/2024) |
| 10/09/2024 | 2 | SUMMONS Submitted by Vicki Coffey. (submitted by Alexander Kruzyk) (Attachments: # 1 Summons, # 2 Summons)(REK) (Entered: 10/09/2024) |
| 10/09/2024 | 3 | Filing fee paid, receipt number AAZDC-23551151. This case has been assigned to the Honorable Deborah M Fine. All future pleadings or documents should bear the correct case number: CV-24-02725-PHX-DMF. Magistrate Election form attached. (Attachments: # 1 Magistrate Consent Form)(REK) (Entered: 10/09/2024) |
| 10/09/2024 | 4 | Summons Issued as to Fast Easy Offer LLC, GFSG LLC, Keller Williams Realty |

| | | |
|---|---|---|
| | | Incorporated. (Attachments: # 1 Summons, # 2 Summons)(REK). *** IMPORTANT: When printing the summons, select "Document and stamps" or "Document and comments" for the seal to appear on the document. (Entered: 10/09/2024) |
| 10/10/2024 | | Remark: Pro hac vice motion(s) granted for Bryan A Giribaldo on behalf of Plaintiff Vicki Coffey. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (BAS) (Entered: 10/10/2024) |
| 10/15/2024 | | Remark: Pro hac vice motion(s) granted for Alexander Kruzyk on behalf of Plaintiff Vicki Coffey. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (BAS) (Entered: 10/15/2024) |
| 10/16/2024 | 6 | Party Elects Assignment of Case to District Judge Jurisdiction. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (MAP) (Entered: 10/17/2024) |
| 10/17/2024 | 7 | MINUTE ORDER: Pursuant to Local Rule 3.7(b), a request has been received for a random reassignment of this case to a District Judge. FURTHER ORDERED Case reassigned by random draw to Judge Steven P Logan. All further pleadings/papers should now list the following COMPLETE case number: CV-24-2725-PHX-SPL. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (MAP) (Entered: 10/17/2024) |
| 10/18/2024 | 8 | PRELIMINARY ORDER: Plaintiff(s) must file proof of service of the summons and complaint or of waiver of service with the Clerk of Court no later than January 7, 2025. Plaintiff(s) must promptly serve a copy of this Order on Defendant(s) and file notice of service with the Clerk of Court. Unless the Court orders otherwise, on January 7, 2025, the Clerk of Court shall terminate without further notice any Defendant in this action that has not been served pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. See document for further details. Signed by Judge Steven P Logan on 10/17/2024. (REK) (Entered: 10/18/2024) |
| 10/23/2024 | 9 | SERVICE EXECUTED filed by Vicki Coffey: Proof of Service re: Summons, Complaint, Civil Cover Sheet, Rule 3.7(a)(1) Consent upon Keller Williams Realty, Inc. on 10/22/2024. (Giribaldo, Bryan) (Entered: 10/23/2024) |
| 10/30/2024 | 10 | SERVICE EXECUTED filed by Vicki Coffey: Certificate of Service re: Summons In A Civil Action; Class Action Complaint; Exhibits; Consent To Exercise Of Jurisdiction By AUnited States Magistrate Judge upon GFSG LLC DBA Keller Williams Realty Phoenix on 10/28/2024. (Kruzyk, Alexander) (Entered: 10/30/2024) |
| 11/12/2024 | 11 | STIPULATION FOR EXTENSION OF TIME TO ANSWER COMPLAINT re: 1 Complaint *(First Request)* by Keller Williams Realty Incorporated. (Attachments: # 1 Proposed Order Proposed Order)(King, Anthony) (Entered: 11/12/2024) |
| 11/12/2024 | 12 | ORDER granting 11 Stipulation For Extension of Time To Answer Complaint. Keller Williams Realty Incorporated answer due 12/12/2024. Signed by Judge Steven P Logan on 11/12/24. (MJW) (Entered: 11/12/2024) |
| 11/14/2024 | | Remark: Pro hac vice motion(s) granted for Matthew David Ingber, Daniel E Jones, |

| | | |
|---|---|---|
| | | Christopher J Mikesh, Archis Ashok Parasharami on behalf of Defendant Keller Williams Realty Incorporated. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (BAS) (Entered: 11/14/2024) |
| 11/21/2024 | 13 | NOTICE of Appearance by Colin Matthew Proksel on behalf of Fast Easy Offer LLC. (Proksel, Colin) (Entered: 11/21/2024) |
| 11/21/2024 | 14 | STIPULATION FOR EXTENSION OF TIME TO ANSWER COMPLAINT re: 1 Complaint by Fast Easy Offer LLC. (Attachments: # 1 Proposed Order)(Proksel, Colin) (Entered: 11/21/2024) |
| 11/21/2024 | 15 | ORDER granting 14 Stipulation For Extension of Time To Answer Complaint. Defendants shall have until December 20, 2024, to file an answer to the Complaint or otherwise respond as provided by Rule 12 of the Federal Rules of Civil Procedure. Signed by Judge Steven P Logan on 11/21/24. (MJW) (Entered: 11/21/2024) |
| 12/13/2024 | 16 | Second STIPULATION FOR EXTENSION OF TIME TO ANSWER COMPLAINT re: 1 Complaint by Fast Easy Offer LLC. (Attachments: # 1 Proposed Order)(Proksel, Colin) (Entered: 12/13/2024) |
| 12/20/2024 | 17 | ORDER granting 16 Stipulation: Defendants shall have until 1/16/2025 to file an answer to the Complaint or otherwise respond as provided by Rule 12 of the Federal Rules of Civil Procedure. Signed by Judge Steven P. Logan on 12/19/2024. (RMW) (Entered: 12/20/2024) |
| 01/16/2025 | 18 | Joint MOTION to Dismiss for Failure to State a Claim by Fast Easy Offer LLC, GFSG LLC, Keller Williams Realty Incorporated. (Attachments: # 1 Exhibit A)(King, Anthony) (Entered: 01/16/2025) |
| 01/22/2025 | 19 | First AMENDED COMPLAINT against Fast Easy Offer LLC, GFSG LLC, Keller Williams Realty Incorporated filed by Vicki Coffey. (Attachments: # 1 Exhibit A - KW Wealth Terms and Conditions)(Kruzyk, Alexander) (Entered: 01/22/2025) |
| 01/22/2025 | 20 | NOTICE of Filing Amended Pleading pursuant to LRCiv 15.1(b) by Vicki Coffey . (Attachments: # 1 Exhibit A - Amended Complaint (Redline Changes))(Kruzyk, Alexander) (Entered: 01/22/2025) |
| 01/27/2025 | 21 | ORDER the parties shall file a joint statement no later than **Friday, January 31, 2025 at 5:00 p.m. (Arizona time),** addressing whether the amended complaint moots the Motion to Dismiss (Doc. 18 ) currently pending in this case, whether the Motion stands as filed, or whether Defendants want to update the Motion in light of Plaintiff's amended complaint. Signed by Judge Steven P. Logan on 1/27/2025. (ESG) (Entered: 01/27/2025) |
| 01/31/2025 | 22 | STIPULATION *Joint Statement in Response to the Courts January 27, 2025 Order and Stipulation Setting Motion to Dismiss Briefing Schedule* re: 21 Order,, Set Deadlines, by Vicki Coffey, Fast Easy Offer LLC, GFSG LLC, Keller Williams Realty Incorporated. (Attachments: # 1 Proposed Order)(King, Anthony) (Entered: 01/31/2025) |
| 01/31/2025 | 23 | ORDER denying without prejudice 18 Motion to Dismiss for Failure to State a Claim. IT IS FURTHER ORDERED that Defendants shall file their motion to dismiss the First |

| | | |
|---|---|---|
| | | Amended Complaint (Doc. 19 ) no later than February 7, 2025. Plaintiff shall file any response in opposition no later than February 21, 2025. Defendants shall file any reply no later than March 7, 2025. Signed by Judge Steven P Logan on 1/31/25. (MJW) (Entered: 01/31/2025) |
| 02/07/2025 | 24 | Joint MOTION to Dismiss for Failure to State a Claim *Defendants Fast Easy Offer LLC, Keller Williams Realty Phoenix, and Keller Williams Realty Inc's Motion to Dismiss First Amended Complaint* by GFSG LLC, Keller Williams Realty Incorporated. (King, Anthony) (Entered: 02/07/2025) |
| 02/21/2025 | 25 | RESPONSE in Opposition re: 24 Joint MOTION to Dismiss for Failure to State a Claim *Defendants Fast Easy Offer LLC, Keller Williams Realty Phoenix, and Keller Williams Realty Inc's Motion to Dismiss First Amended Complaint* filed by Vicki Coffey. (Kruzyk, Alexander) (Entered: 02/21/2025) |
| 03/07/2025 | 26 | REPLY to Response to Motion re: 24 Joint MOTION to Dismiss for Failure to State a Claim *Defendants Fast Easy Offer LLC, Keller Williams Realty Phoenix, and Keller Williams Realty Inc's Motion to Dismiss First Amended Complaint* filed by Fast Easy Offer LLC, GFSG LLC, Keller Williams Realty Incorporated. (Carrasco, Megan) (Entered: 03/07/2025) |
| 06/05/2025 | 27 | ORDER that Defendants' Motion to Dismiss (Doc. 24 ) is granted and this case is dismissed with prejudice. IT IS FURTHER ORDERED that the Clerk of Court shall enter judgment accordingly and terminate this action. Signed by Judge Steven P Logan on 6/5/2025. (ALR) (Entered: 06/05/2025) |
| 06/05/2025 | 28 | CLERK'S JUDGMENT - IT IS ORDERED AND ADJUDGED that pursuant to the Court's order filed June 5, 2025, Plaintiff to take nothing, and the complaint and action are dismissed with prejudice. (ALR) (Entered: 06/05/2025) |
| 06/27/2025 | 29 | NOTICE OF APPEAL to 9th Circuit Court of Appeals re: 28 Clerks Judgment, 27 Order on Motion to Dismiss for Failure to State a Claim, by Vicki Coffey. Filing fee received: $ 605.00, receipt number AAZDC-24453110. (Kruzyk, Alexander) (Entered: 06/27/2025) |
| 07/01/2025 | 30 | USCA Case Number re: 29 Notice of Appeal. Case number 25-4066, Ninth Circuit. (DXD) (Entered: 07/01/2025) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 10/14/2025 13:19:42 | | |
| PACER Login: | efreeman | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:24-cv-02725-SPL |
| Billable Pages: | 4 | Cost: | 0.40 |