No. 25-4066

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VICKI COFFEY, on behalf of herself and all others similarly situated,
*Plaintiff-Appellant,*

v.

FAST EASY OFFER LLC, GFSG LLC d/b/a/ KELLER WILLIAMS REALTY PHOENIX, and KELLER WILLIAMS REALTY, INC.,
*Defendants-Appellees.*

On Appeal from the U.S. District Court for the District of Arizona,
No. 24-cv-02725 (Hon. Stephen P. Logan)

## DEFENDANTS-APPELLEES' JOINT ANSWERING BRIEF

Eric M. Fraser
OSBORN MALEDON, P.A.
2929 N. Central Ave., Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com

*Attorneys for Defendant-Appellee Fast Easy Offer LLC*

James Michael Cool
FRAZER RYAN GOLDBERG & ARNOLD, LLP
1850 N. Central Ave, Suite 1800
Phoenix, Arizona 85004
(602) 277-2010
jcool@frgalaw.com

*Attorneys for Defendant-Appellee GFSG LLC, d/b/a Keller Williams Realty Phoenix*

Archis A. Parasharami
Daniel E. Jones
Leif Overvold
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
aparasharami@mayerbrown.com

*Attorneys for Defendant-Appellee Keller Williams Realty, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................iv

INTRODUCTION ................................................................................... 1

STATEMENT OF JURISDICTION ........................................................ 4

STATEMENT OF THE ISSUE .............................................................. 4

STATEMENT OF THE CASE ............................................................... 5

    A.    Statutory and Regulatory Background ................................ 5

    B.    Factual Background ............................................................ 7

    C.    Procedural History ............................................................. 9

STANDARD OF REVIEW ................................................................... 12

SUMMARY OF ARGUMENT ............................................................. 12

ARGUMENT ....................................................................................... 15

I.    The District Court Correctly Concluded That The Inquiries
Coffey Allegedly Received About Selling Her Home Are Not
"Telephone Solicitations" ............................................................ 15

    A.    The Statutory Text Requires That The Communication
Itself Demonstrate The Purpose Of Encouraging The
Purchase Or Rental Of, Or Investment In, Property,
Goods, Or Services .......................................................... 16

    B.    The Communications Coffey Alleges Receiving Did Not
Demonstrate Any Purpose To Encourage The Purchase
Or Rental Of, Or Investment In, Property, Goods, Or
Services ........................................................................... 22

II.    Coffey's Efforts To Bring The Alleged Communications
Within The Scope Of Section 227(c) Of The TCPA All Fail ......... 29

    A.    Coffey's Allegations Regarding FEO's Business Model
Do Not Transform The Communications She Received
Into "Telephone Solicitations" ......................................... 29

    B.    Coffey's Policy-Based Arguments For Departing From
The Text Of The TCPA Fail .............................................. 42

# TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION ................................................................................. 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Catalina Structured Funding, Inc.*,
  2021 WL 8315006 (W.D. Mich. Dec. 21, 2021) ............................ 40, 41

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................ 12

*Aussieker v. Aghazadeh*,
  2025 WL 2021040 (E.D. Cal. July 18, 2025) ............................... 20, 23

*Bare v. Barr*,
  975 F.3d 952 (9th Cir. 2020) ......................................................... 17, 18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................... 12, 38

*Berman v. Freedom Financial Network, LLC*,
  400 F. Supp. 3d 964 (N.D. Cal. 2019) ............................................. 22

*Boudette v. Barnette*,
  923 F.2d 754 (9th Cir. 1991) ............................................................ 18

*Chambers v. C. Herrera*,
  78 F.4th 1100 (9th Cir. 2023) .......................................................... 25

*Chesbro v. Best Buy Stores, L.P.*,
  705 F.3d 913 (9th Cir. 2012)
  ................................................... 2, 10, 11, 20, 24, 27, 28, 31, 33, 34, 40

*Chinitz v. NRT West, Inc.*,
  2019 WL 720996 (N.D. Cal. Feb. 20, 2019) ................................. 32, 33

*Cobbler Nevada, LLC v. Gonzales*,
  901 F.3d 1142 (9th Cir. 2018) ........................................................... 12

*Davis v. Reliance First Capital, LLC*,
  2023 WL 1982354 (E.D.N.C. Feb. 13, 2023) ..................................... 31

iv

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*DeHoog v. Anheuser-Busch InBev SA/NV,*
899 F.3d 758 (9th Cir. 2018)................................................................38

*Eagle v. GVG Cap., LLC,*
2023 WL 1415615 (W.D. Mo. Jan. 31, 2023)......................................40

*Edelsberg v. Vroom, Inc.,*
2018 WL 1509135 (S.D. Fla. Mar. 27, 2018) ......................................35

*Erickson v. Pardus,*
551 U.S. 89 (2007)..............................................................................24

*Facebook, Inc. v. Duguid,*
592 U.S. 395 (2021)........................................................ 3, 11, 16, 43

*Friedman v. Torchmark Corp.,*
2013 WL 4102201 (S.D. Cal. Aug. 13, 2013) ......................................26

*Gerrard v. Acara Sols., Inc.,*
469 F. Supp. 3d 96 (W.D.N.Y. 2020)..................................................26

*Golan v. Veritas Entertainment, LLC,*
788 F.3d 814 (8th Cir. 2015)........................................................ 31, 32

*Gross v. GG Homes, Inc.,*
2021 WL 2863623 (S.D. Cal. July 8, 2021).........................................27

*Helfrich v. Raven3 Home Buyers LLC,*
2023 WL 5956221 (S.D.N.Y. Sept. 13, 2023)................................ 39, 42

*Herrera v. First Nat'l Bank of Omaha, Inc.,*
2017 WL 6001718 (C.D. Cal. Dec. 4, 2017) ......................................21

*Hulce v. Zipongo Inc.,*
132 F.4th 493 (7th Cir. 2025) ........................................ 21, 25, 26, 42

v

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Hulce v. Zipongo, Inc.*,
 723 F. Supp. 3d 669 (E.D. Wis. 2024)................................................32

*Hunsinger v. Offer, LLC*,
 2022 WL 18143951 (N.D. Tex. Dec. 7, 2022)....................................23

*Jance v. Homerun Offer, LLC*,
 2021 WL 3270318 (D. Ariz. July 30, 2021)........................... 23, 24, 30

*Kisor v. Wilkie*,
 588 U.S. 558 (2019)..............................................................................34

*Knutson v. Blue Light Sec., Inc.*,
 2018 WL 1172611 (S.D. Cal. Mar. 6, 2018) ................................. 23, 30

*Loper Bright Enterprises v. Raimondo*,
 603 U.S. 369 (2024)..............................................................................34

*Loyhayem v. Fraser Fin. & Ins. Servs., Inc.*,
 7 F.4th 1232 (9th Cir. 2021) ...............................................................17

*Martinez v. TD Bank USA, N.A.*,
 2017 WL 2829601 (D.N.J. June 30, 2017).........................................21

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
 606 U.S. 146 (2025)....................................................................... 16, 34

*McMorrow v. Core Properties, LLC*,
 2023 WL 8697795 (E.D. Mo. Dec. 15, 2023)......................................40

*Miranda v. Anchondo*,
 684 F.3d 844 (9th Cir. 2012)................................................................16

*Moonsawmy v. JWS Acquisitions, LLC*,
 Case No. 1:23-cv-04198-LMM, ECF No. 16 (N.D. Ga. July
 18, 2024) ...............................................................................................39

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ............................................................. 12

*Murphy v. DCI Biologicals Orlando, LLC*,
2013 WL 6865772 (M.D. Fla. Dec. 31, 2013) .................................... 26

*Orea v. Nielsen Audio, Inc.*,
2015 WL 1885936 (N.D. Cal. Apr. 24, 2015) .............................. 27, 28

*Osheske v. Silver Cinemas Acquisition Co.*,
132 F.4th 1110 (9th Cir. 2025) ......................................................... 12

*Penzer v. Transp. Ins. Co.*,
545 F.3d 1303 (11th Cir. 2008) ........................................................ 21

*Pepper v. GVG Cap. LLC*,
677 F. Supp. 3d 638 (S.D. Tex. 2023) ............................................... 40

*Phan v. Agoda Co. Pte. Ltd.*,
798 F. App'x 157 (9th Cir. 2020) ................................................. 34, 35

*Reardon v. Uber Techs., Inc.*,
115 F. Supp. 3d 1090 (N.D. Cal. 2015) ............................................. 26

*SEC v. McCarthy*,
322 F.3d 650 (9th Cir. 2003) ............................................................. 18

*Silvers v. Sony Pictures Ent., Inc.*,
402 F.3d 881 (9th Cir. 2005) ............................................................. 18

*Smith v. Blue Shield of Cal. Life & Health Ins. Co.*,
228 F. Supp. 3d 1056 (C.D. Cal. 2017) ............................................. 35

*Trim v. Reward Zone USA LLC*,
76 F.4th 1157 (9th Cir. 2023) ........................................................... 42

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Wilcox v. MarketPro S., Inc.*,
  2023 WL 8806696 (D. Md. Dec. 20, 2023) ......................................... 39

**Statutes**

28 U.S.C. § 1291 ........................................................................................ 4

28 U.S.C. § 1331 ........................................................................................ 4

Telephone Consumer Protection Act
  47 U.S.C. § 227(a)(4) ............................ 1, 2, 4, 5, 10, 13, 15, 16, 19, 21
  47 U.S.C. § 227(b)(1)(A)(iii) ...................................................... 17
  47 U.S.C. § 227(b)(1)(B) ............................................................ 17
  47 U.S.C. § 227(c)............................................................... 12, 15
  47 U.S.C. § 227(c)(1) ...................................................... 4, 5, 15, 17
  47 U.S.C. § 227(c)(3) ........................................................... 5
  47 U.S.C. § 227(c)(3)(F)....................................................... 5
  47 U.S.C. § 227(c)(5) ......................................................... 6, 9

**Other Authorities**

47 C.F.R. § 64.1200(a)(2)..................................................................... 6, 33

47 C.F.R. § 64.1200(a)(3) ........................................................................ 6

47 C.F.R. § 64.1200(c)........................................................................... 4, 6

47 C.F.R. § 64.1200(c)(2) ....................................................................... 15

47 C.F.R. § 64.1200(d) ............................................................................. 6

47 C.F.R. § 64.1200(f)(13)......................................................................... 6

47 C.F.R. § 64.1200(f)(15)............................................... 4, 6, 10, 13, 15, 16

Fed. R. App. P. 4(a)(1)(A) ........................................................................ 4

viii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In the Matter of Rules & Reguls. Implementing the Tel.*
  *Consumer Prot. Act of 1991,*
    20 FCC Rcd. 3788 (2005) ......................................................... 35, 36

*In re Rules and Regulations Implementing the Telephone*
  *Consumer Protection Act of 1991,*
    18 FCC Rcd. 14014 (2003) ......................................................... 33, 34

S. Rep. No. 102-177 (1991) ................................................................... 19

ix

## INTRODUCTION

Under the relevant provisions of the Telephone Consumer Protection Act, communications must qualify as "telephone solicitations" within the meaning of the statute to be actionable. The text of the TCPA explains that a "telephone solicitation" is "the initiation of a telephone call or message for the purpose of *encouraging the purchase or rental of, or investment in,* property, goods, or services." 47 U.S.C. § 227(a)(4) (emphasis added). Contrary to plaintiff Vicki Coffey's arguments on appeal, the TCPA therefore *does not* prohibit all communications made for a commercial purpose to individuals on the national do-not-call list. The issue in this case is whether Coffey can transform communications inquiring about her interest in *selling* her home into offers encouraging her to *buy* something.

The district court correctly concluded that she cannot, because the communications she alleges receiving do not meet the statute's definition of a "telephone solicitation." Both of the text messages described in the operative complaint and the non-conclusory allegations about other calls and texts reflect that the caller only inquired about Coffey's interest in selling her home. Relying heavily on the word "purpose" in the statutory

1

definition, Coffey urges the Court to ignore the content of the communications and instead endorse a free-wheeling inquiry into the "caller's subjective intention, not the specific words of his message," based on allegations about the caller's overall business model. Br. 24. That proposal stretches the word "purpose" far beyond what it can bear. Rather, the "telephone call or message" itself, not the caller's business more broadly, must reflect the "purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4).

That is why, as the district court recognized, the statute requires that a communication "directly advertise, not relate to some potential advertising that the alleged solicitor may want to conduct in the future." ER-11. Simply put, Section 227(c) of the TCPA addresses only "telephone solicitations" themselves, not the type of communications alleged here that *might* later lead to solicitations.

Coffey relies heavily on this Court's decision in *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012). But the facts in *Chesbro* were markedly different, and the legal analysis in that case supports the district court's decision, not Coffey's position. In *Chesbro*, Best Buy sent a message that itself urged the recipient to redeem Best Buy rewards

2

points—an act that would require making a purchase from Best Buy. In other words, this Court looked at the content and context of the actual message—not, as Coffey urges, at the "subjective intention" of the caller.

Coffey also relies on out-of-circuit district court cases that have accepted her "subjective intent" approach and inferred—based on the nature of the caller's business—that the caller intended to offer services in the future, and that intent was sufficient to treat the communications at issue as "telephone solicitations." But the decision below, and the cases on which it relied, are more persuasive because they adhere to the statutory text.

Finally, Coffey's protest that applying the statute as written will create a giant "loophole" (Br. 2) flies in the face of the Supreme Court's rejection of similar policy arguments for expanding the TCPA's coverage. The Supreme Court has warned against extending the reach of the TCPA beyond its text, noting that courts "must interpret what Congress wrote" and that policy arguments for expanding statutory coverage are reserved for Congress. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 408-09 (2021); *accord* ER-9.

3

In sum, the district court faithfully applied the text of the TCPA in dismissing Coffey's lawsuit. The decision below should be affirmed.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331, because Coffey alleged a violation of the TCPA, a federal statute. *See* ER-33-ER-34. This Court has jurisdiction under 28 U.S.C. § 1291. The district court entered final judgment on June 5, 2025. ER-4. Coffey filed a timely notice of appeal on June 27, 2025. ER-37-38; *see* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUE

Coffey's cause of action under the TCPA requires that she allege receiving more than one "telephone solicitation" within a 12-month period. 47 U.S.C. § 227(c)(1), (5); 47 C.F.R. § 64.1200(c). The statute defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the *purchase or rental of, or investment in*, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added); *see also* 47 C.F.R. § 64.1200(f)(15) (adopting identical definition).

The question presented is whether the district court correctly held that Coffey failed to plausibly allege that she had received a "telephone solicitation," because the calls and messages at issue inquired only into

4

whether she was interested in *selling* her home, and did not encourage her to purchase, rent, or invest in any property, goods, or services.

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

When Congress enacted the TCPA in 1991, it directed the Federal Communications Commission to issue regulations protecting residential telephone subscribers from "receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Rather than leave the term "telephone solicitation" undefined, Congress chose to enact a precise definition of the term. The statute defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 227(a)(4). (The definition also includes exceptions that are not relevant here.)

Congress further authorized the FCC to create and administer a national "do-not-call registry" and, if it decided to create such a registry, the statute directed the Commission to issue regulations "prohibit[ing] any person from making or transmitting a telephone solicitation to the telephone number of any subscriber" listed in the registry. *Id.* § 227(c)(3), (c)(3)(F). The TCPA provides a private right of action for any person "who

5

has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under" the relevant provision of the statute. *Id.* § 227(c)(5).

The regulations that the FCC ultimately issued prohibit a person or entity from "initiat[ing] any telephone solicitation to . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c). The regulations contain the same definition of a "telephone solicitation" as the statute, defining the term to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(15).[1]

---

[1] Other regulatory provisions impose restrictions on calls that constitute "telemarketing," which the regulation defines the same way—i.e., as the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13); *see, e.g., id.* § 64.1200(a)(2)-(3), (d).

6

### B. Factual Background

Plaintiff Coffey is an Arizona resident who alleges that her cell phone number has long been registered with the Do Not Call Registry. ER-16, ¶ 19. Coffey alleges that, beginning at an unspecified time in "early 2024," she received "numerous telephone calls and text messages from a rotating series of phone numbers." ER-16, ¶ 20. Coffey alleges that "most" of the "entities" making these calls and sending these messages did not disclose their identity. ER-17, ¶ 21.

The operative amended complaint does not specify the total number of calls Coffey alleges receiving, but Coffey alleges that, in and around September and October 2024, she received at least six calls and two text messages from an individual named "Yannick." ER-17-18, ¶¶ 21-23, 25.

Coffey alleges that at one point she spoke with the caller "solely to identify the entity responsible" for the calls and texts. ER-18, ¶ 26. She claims that this individual directed her to a website allegedly operated by defendant Fast Easy Offer (FEO). ER-18, ¶¶ 27-28. According to Coffey, FEO's website "explains that FEO seeks to purchase and resell residential real estate." ER-18, ¶ 29.

The amended complaint does not describe the alleged calls in any detail. It reproduces two of the alleged text messages. The first text, dated September 23, 2024, reads: "Hello Vickey, this is Yannick the home buyer. Have you given up on selling your [street address] Gilbert, AZ 85297 property." ER-18, ¶ 23.[2] The second text, dated October 7, 2024, reads: "Have you given up on selling your property?" ER-18, ¶ 23. For the remaining calls and texts, the complaint alleges in conclusory fashion that the calls or texts sought "to solicit Plaintiff to sell her home or engage various entities to represent or assist her in the sale of her home." ER-16, ¶ 20.

In an effort to connect these communications to the other two defendants, the complaint alleges that one of FEO's members, Brett Tanner, is a "real estate agent[] or employee[]" of defendant GFSG LLC d/b/a Keller Williams Realty Phoenix (KW Phoenix). ER-15, 24, ¶¶ 9, 53. Coffey further alleges that Tanner also runs a paid subscription program called "KW Wealth" that is "run[] and own[ed]" by defendant Keller Williams Realty, Inc. (KWRI). ER-25, ¶¶ 62-63. Coffey alleges that the KW

---

[2] The bracketed material is the street address of the property.

Wealth program includes education relating to real-estate wholesaling. ER-25, ¶ 64.[3]

## C.    Procedural History

Based on the above allegations, Coffey filed a putative class action, asserting one claim against defendants FEO, KW Phoenix, and KWRI under Section 227(c) of the TCPA, which provides a private cause of action for a plaintiff who "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" regulations promulgated by the FCC under the statute.   47 U.S.C. § 227(c)(5); *see* ER-33-34, ¶¶ 122-130.

Defendants responded to the operative amended complaint by filing a motion to dismiss, arguing that (1) Coffey's claim fails against all defendants because Coffey did not (and could not) plausibly allege that the calls and messages she received constituted "telephone solicitations" under the TCPA; and (2) as to KWRI, Coffey's claim independently fails for

---

[3] Coffey's implication (Br. 14-16) that KWRI offers real-estate services or employs real-estate agents is inaccurate.  KWRI is a franchisor that enters into franchise agreements with third-party franchisees like KW Phoenix, which in turn work with independent real-estate agents.

failure to plausibly allege that KWRI is vicariously liable for the alleged calls and texts. *See generally* Dkt. 25.

The district court granted the motion to dismiss on the first ground, and therefore did not reach the vicarious liability argument. ER-5-12. The district court applied the statutory and regulatory definitions of a prohibited "telephone solicitation," which require initiating a call or message "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." ER-7; *see* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). The district court also recognized that this Court's precedents allow for determining the "purpose of the message" using "a measure of common sense" based on the "context" of the message. ER-10-11 (quoting *Chesbro*, 705 F.3d at 918).

The court held that Coffey failed to state a claim because the alleged messages did not encourage Coffey to purchase, rent, or invest in anything. ER-10-12. As the court explained, the statutory definition of "telephone solicitation" requires that "the soliciting message must [itself] directly advertise, not relate to some potential advertising that the alleged solicitor may want to conduct in the future." ER-11. And even taking into account the potential that Coffey's home would be purchased in the

10

future, the court continued, the alleged messages at issue in this case "never encouraged Plaintiff [Coffey herself] 'to engage in future purchasing activity' at all—only to engage in future *selling* activity." ER-11 (quoting *Chesbro*, 705 F.3d at 918) (emphasis added).

Finally, the court rejected Coffey's policy-based arguments for a more "colloquial" reading of "solicitations" that would encompass Coffey's argument that the calls or texts implicitly offered her services. ER-12. It noted that "the plain statutory meaning of the term" controls and "must carry the day," and that Coffey's "'quarrel is with Congress, which did not define' solicitation 'as malleably as [s]he would have liked.'" ER-12 (quoting *Duguid*, 592 U.S. at 409).

The district court dismissed the case with prejudice. ER-12-13. Coffey had already amended her complaint once in response to an initial motion to dismiss, and the district court explained that further amendment would be futile because the communications did not qualify as "telephone solicitations" as a matter of law. ER-12-13.

11

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's grant of a motion to dismiss for failure to state a claim. *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110, 1113 (9th Cir. 2025).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). That requires more than just "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Instead, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *see also*, *e.g.*, *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1147 (9th Cir. 2018) (factual allegations must be "'enough to raise a right to relief above the speculative level'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## SUMMARY OF ARGUMENT

**I.** To state a claim under 47 U.S.C. § 227(c), a plaintiff must allege that he or she received more than one unwanted "telephone solicitation" within the meaning of the TCPA and its implementing regulations. The

statute defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4); *accord* 47 C.F.R. § 64.1200(f)(15). By its terms, the statute thus encompasses only calls and messages designed to *sell* something *to* the recipient —not, as here, offers to *buy* something *from* the recipient. Communications made for the purpose of encouraging someone to sell their property are not included within the plain text of the TCPA's definition of "telephone solicitations."

Applying this principle, the district court correctly concluded that Coffey had failed to allege that she had received a "telephone solicitation" within the meaning of the TCPA. The non-conclusory allegations in the complaint reflect that the communications only inquired about whether Coffey was interested in selling her home. Such calls and messages are not covered by the TCPA, as several courts have held.

**II.** Coffey's arguments that the alleged communications are "telephone solicitations" under the TCPA all fail.

Coffey argues that the district court should have inferred that the communications contained an implicit offering of real-estate services

13

based on the allegations in her complaint regarding FEO's business model. But the district court correctly focused its analysis on the actual communications that Coffey allegedly received, rather than the caller or its alleged business model. Nothing in the content or context of the messages themselves demonstrates that Coffey was encouraged to purchase anything. That is dispositive; Coffey's attempt to allege an attenuated link between the communications and possible *future* solicitations by FEO does not suffice.

Coffey identifies no other basis to depart from the TCPA's plain text, which covers only communications encouraging the purchase—rather than the sale—of property or services. Coffey highlights the TCPA's remedial purpose, but that reliance on one of the statute's purposes can place a thumb on the scale only when there is ambiguity in the text to resolve. There is no such ambiguity here. And to the extent Coffey raises policy-based challenges to the district court's interpretation of the TCPA, the district court correctly recognized that, under the Supreme Court's decision in *Duguid*, those arguments are properly directed to Congress, not the courts.

14

## ARGUMENT

**I.** **The District Court Correctly Concluded That The Inquiries Coffey Allegedly Received About Selling Her Home Are Not "Telephone Solicitations"**

To state a claim under 47 U.S.C. § 227(c), Coffey must allege that she received more than one unwanted "telephone solicitation" within the meaning of the TCPA and its implementing regulations from the same entity within a 12-month period. *See* 47 U.S.C. § 227(c)(1), (5); 47 C.F.R. § 64.1200(c)(2).

The statute and regulations define "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). The district court correctly concluded that Coffey was unable to plead that she had received a "telephone solicitation," where her complaint alleged only that she had received calls and messages that at most sought "to solicit Plaintiff to *sell* her home." ER-16 (emphasis added); *see* ER-7.

15

### A. The Statutory Text Requires That The Communication Itself Demonstrate The Purpose Of Encouraging The Purchase Or Rental Of, Or Investment In, Property, Goods, Or Services

In interpreting the TCPA, the Court "begin[s] with the text." *Duguid*, 592 U.S. at 402. "The preeminent canon of statutory interpretation requires" the Court "to presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012) (quotation marks omitted).

As the district court recognized, by its terms, the statutory definition of "telephone solicitation" requires that the communication encourage the "purchase"—not the sale—of property, goods, or services. *See* ER-6-ER-7; 47 U.S.C. § 227(a)(4). (While the statute is what controls, *see McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025), the regulatory definition is identical, *see* 47 C.F.R. § 64.1200(f)(15).) Communications made for the purpose of encouraging a person to sell something do not fit the statutory definition.

That conclusion is underscored by the fact that other prohibitions in the TCPA extend more broadly to "any" calls, in contrast to Section 227(c)'s more limited restriction on "telephone solicitations." *Compare* 47

16

U.S.C. § 227(c)(1) (directing the FCC to issue regulations relating to protecting residential telephone subscribers from receiving objectionable "telephone solicitations"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (imposing restrictions on the placement of "*any* call" to a cell phone using an "automatic telephone dialing system" or artificial or prerecorded voice) (emphasis added), *and* 47 U.S.C. § 227(b)(1)(B) (imposing restrictions on placing "*any* telephone call to any residential telephone line" using an artificial or prerecorded voice) (emphasis added). As this Court has recognized, these separate provisions of the TCPA—which restrict the use of certain types of technologies—are not limited to calls involving advertising or marketing. *See Loyhayem v. Fraser Fin. & Ins. Servs., Inc.*, 7 F.4th 1232, 1234 (9th Cir. 2021).

The more limited scope Congress chose for Section 227(c) must be given effect by excluding calls that do not satisfy the statutory definition of a "telephone solicitation." "It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words." *Bare v. Barr*, 975 F.3d 952, 968 (9th Cir. 2020) (quoting

17

*SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003)). The Court, therefore, "must presume Congress intended a different meaning when it uses different words in connection with the same subject" (*id.* (quotation marks omitted))—here, by choosing in Section 227(c) to restrict only calls that satisfy the definition of "telephone solicitation" rather than all unwanted calls.

Moreover, Congress *could* have defined a "telephone solicitation" as "'the initiation of a telephone call or message for the purpose of encouraging the purchase, **sale**, or rental of, or investment in, property, goods, or services, which is transmitted to any person." Its decision to leave out the word "sale" matters: "The doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'" *Silvers v. Sony Pictures Ent., Inc.,* 402 F.3d 881, 885 (9th Cir. 2005) (quoting *Boudette v. Barnette,* 923 F.2d 754, 756-57 (9th Cir. 1991)).[4]

---

[4] An earlier Senate version of the bill that would eventually become the TCPA defined "unsolicited telephone solicitation" to mean "a telephone call by a live person for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, *or for other commercial*

18

Contrary to Coffey's assertions, the district court's adherence to the statutory definition of "telephone solicitation" did not result from any "misapprehension about the nature of textualism." Br. 32. Coffey contends that the "specific words used" in the communications do not matter, because "a *textualist* reading of the *TCPA* actually requires a *purposivist* approach to interpreting *telephone communications*." *Id.* (emphasis in original); *see id.* at 24 (arguing that whether a communication qualifies as a "telephone solicitation" is based on the "caller's subjective intention, not the specific words of the message"). But that selective reading of the phrase "for the purpose" in the statutory definition ignores that the phrase modifies the immediately preceding phrase "the initiation of a *telephone call or message*." 47 U.S.C. § 227(a)(4) (emphasis added). In other words, it is the specific "telephone call or message" that the caller initiates—not the subjective intention of the caller more broadly—that must reflect "the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." *Id.*

---

*purposes*." *See* S. REP. NO. 102-177, at 16 (1991) (emphasis added). But Congress dropped the phrase "for other commercial purposes" from the version of the TCPA that was enacted.

19

That is why this Court has previously looked to the content and context of the "*calls at issue*" themselves "to determine whether *they demonstrate* a prohibited advertising purpose." *Chesbro*, 705 F.3d at 918 (emphases added) (addressing the similar definitions of "unsolicited advertisement" and "telemarketing"); *see also id.* (referring to the "purpose of the message," not to the purpose of the caller more broadly) (quotation marks omitted); pages 27-28, *infra* (discussing *Chesbro* in more detail); *see also Aussieker v. Aghazadeh*, 2025 WL 2021040, at \*3 (E.D. Cal. July 18, 2025) (report and recommendation) ("Whether a call or text is considered a solicitation is determined by the *purpose of the message*") (citing *Chesbro*) (emphasis added).  While Coffey relies heavily on *Chesbro*, the district court correctly recognized that *Chesbro* supported its decision—not Coffey's position—because it requires that the communication itself "encourag[e] Plaintiff 'to engage in future purchasing activity.'"  ER-11 (quoting *Chesbro*, 705 F.3d at 918).

The Seventh Circuit too has underscored the importance of adhering to the precise definition chosen by Congress.  That court recently rejected the argument that all "commercial calls" or "profit-seeking" calls that may make an ultimate purchase "more likely to happen" qualify as

20

"telephone solicitations." *Hulce v. Zipongo Inc.*, 132 F.4th 493, 499 (7th Cir. 2025). Instead, "Congress required the proscribed calls to have a more particular purpose—'encouraging the purchase' of something"— which requires that the communication itself "'persuade' or 'urge' someone to *pay for* a service." *Id.* at 498-99 (emphasis added).

In sum, Coffey's proposal for courts to define a "telephone solicitation" based on the "caller's subjective intention" (Br. 24) is wholly atextual, because it opens the door to wide-ranging inquiries into the *caller* and inferences about the nature of the caller's business—in direct contravention of Congress's instruction to determine the purpose demonstrated by the "telephone call or message" itself (47 U.S.C. § 227(a)(4)). *Cf.*, *e.g.*, *Herrera v. First Nat'l Bank of Omaha, Inc.*, 2017 WL 6001718, at *3 (C.D. Cal. Dec. 4, 2017) (noting that "[c]ourts do not consider the called party's subjective intent" in determining whether a TCPA plaintiff revoked prior consent to be called); *Martinez v. TD Bank USA, N.A.*, 2017 WL 2829601, at *4 (D.N.J. June 30, 2017) (same; courts instead "look to the words the called party used"). As courts have recognized, a TCPA defendant's intent is relevant *only* to assessing "treble damages" under the statute, not to assessing liability in the first place. *Penzer v. Transp. Ins. Co.*, 545

21

F.3d 1303, 1311 (11th Cir. 2008) (collecting cases); *accord*, *e.g.*, *Berman v. Freedom Financial Network, LLC*, 400 F. Supp. 3d 964, 981 (N.D. Cal. 2019). Coffey's approach is also wholly unworkable, because it provides no objective criteria for assessing liability under the statute; instead, liability would turn solely on subjective assessments of the caller's motivations. Simply put, that is not the law that Congress enacted.

### B. The Communications Coffey Alleges Receiving Did Not Demonstrate Any Purpose To Encourage The Purchase Or Rental Of, Or Investment In, Property, Goods, Or Services

The district court correctly concluded that asking a recipient of a call or message whether she wants to *sell* something—here, inquiring into Coffey's interest in selling her home—is not a "telephone solicitation" as that term is defined in the TCPA.

To the extent Coffey's complaint described the actual content of the communications she received, it indicated only that Coffey had received messages asking about her interest in "*selling* [her] property." ER-18, ¶ 23 (emphasis added). For example, the two text messages reproduced in the complaint asked Coffey only if she had "given up on selling" her property. *Id.*; *see* page 8, *supra*.

22

These communications are not encompassed by the plain terms of the TCPA, as the court below and several other district courts—including in this Circuit—have held. *See* ER-9; *Aussieker*, 2025 WL 2021040, at *3-*4 (discussing at length and agreeing with the decision below); *Hunsinger v. Offer, LLC*, 2022 WL 18143951, at *6 (N.D. Tex. Dec. 7, 2022), *report and recommendation adopted*, 2023 WL 122649 (N.D. Tex. Jan. 6, 2023); *Jance v. Homerun Offer, LLC*, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021). For good reason: neither the definition of "telephone solicitation" nor that of "telemarketing" under the TCPA "encompasses a scenario in which the caller offers to buy something from the recipient of the call." *Jance*, 2021 WL 3270318, at *4; *see also Knutson v. Blue Light Sec., Inc.*, 2018 WL 1172611, at *4 (S.D. Cal. Mar. 6, 2018) ("Notably, neither of these [definitions] includes offers to *buy* something.").

Accordingly, the calls or texts must "*directly advertise*" (*Jance*, 2021 WL 3270318, at *4 (emphasis added)) and encourage "a purchase by the consumer, not by the caller" (*Hunsinger*, 2022 WL 18143951, at *6). *See* ER-11. Calls or texts "that are related in some attenuated way to advertising or telemarketing the caller intends to conduct *in the future*" do not

23

suffice under the ordinary meaning of the statutory definition. *Jance*, 2021 WL 3270318, at *4 (emphasis added).

Coffey disparages *Jance* and *Hunsinger* as cases "brought by pro se plaintiffs" and complains that the plaintiffs in those cases did not plead that the offers to buy property also contained implicit service offerings. Br. 21, 44-47. But the communications in those cases are indistinguishable from the ones here, and the courts in *Jance* and *Hunsinger*, like the decision below, held as a matter of law that those communications do not qualify as "telephone solicitations." As the district court recognized, *Jance* "correctly focused its analysis on the statutory text of the TCPA and its implementing regulations." ER-9.

Moreover, Coffey's argument appears to suggest that those district courts would have reached a different result if they were presented with more sophisticated allegations or arguments drafted by counsel—even though the underlying communications and the statutory definition would remain unchanged. That insinuation is wholly unfounded. If anything, courts offer *pro se* plaintiffs *greater* solicitude than represented ones, particularly with respect to factual allegations. *See, e.g., Erickson*

24

*v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Chambers v. C. Herrera*, 78 F.4th 1100, 1108 (9th Cir. 2023).

The district court's faithful application of the TCPA's definition of "telephone solicitation" in the context of offers to buy real estate also is consistent with the approach courts have taken in other contexts. Courts have adhered to the plain language of the TCPA's definitions and concluded that calls or texts are not "telephone solicitations" or "telemarketing" when they do not offer to sell a product or service to the recipient of the call.

The Seventh Circuit, for example, held that calls from a for-profit company that offers nutritional consulting services were not "telephone solicitations" under the TCPA because the services were funded through the plaintiff's healthcare plan and therefore free to the plaintiff. *Hulce*, 132 F.4th at 496-97, 500. While the defendant was a commercial enterprise and would make money if the plaintiff chose to use its services as a result of the calls and messages, that was not enough to make the calls and messages "telephone solicitations," because the statutory definition instead requires the call to encourage the *recipient* to pay for a product or service: "[W]hile Foodsmart's purpose was to encourage Hulce

25

to *use* its services, its purpose could not have been to encourage Hulce to *pay* for services that were free to him." *Id.* at 500. The "clear statutory language," the Seventh Circuit explained, foreclosed the plaintiff's broader reading of the term "telephone solicitation." *Id.*

Other courts have likewise faithfully applied the TCPA's definition of "telephone solicitation" (or the identical regulatory definition of "telemarketing") and held that it does not encompass:

- a message offering to pay the plaintiff for a blood donation, *see Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797 F.3d 1302 (11th Cir. 2015);

- messages seeking to recruit drivers to use a ride-sharing application, *see Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1096-97 (N.D. Cal. 2015);

- messages alerting the plaintiff to potential work opportunities, *see, e.g., Gerrard v. Acara Sols., Inc.*, 469 F. Supp. 3d 96, 99 (W.D.N.Y. 2020); *Friedman v. Torchmark Corp.*, 2013 WL 4102201, at *6-7 (S.D. Cal. Aug. 13, 2013);

26

- calls asking the plaintiff to participate in a market-research survey, *see Orea v. Nielsen Audio, Inc.*, 2015 WL 1885936, at \*4 (N.D. Cal. Apr. 24, 2015); and

- messages seeking information on off-market real-estate opportunities, *see Gross v. GG Homes, Inc.*, 2021 WL 2863623, at \*8 (S.D. Cal. July 8, 2021), *rev'd in part on other grounds on reconsideration*, 2021 WL 4804464 (S.D. Cal. Oct. 14, 2021).

In each case, the court concluded that a message that was sent for an admittedly commercial reason was nevertheless outside the definition of a "telephone solicitation" because the message did not encourage the recipient to purchase something.

Finally, the district court also correctly applied this Court's precedents holding that a communication may still qualify as a "telephone solicitation" even if it does not on its face reference a specific product or service, so long as the message still encourages a purchase in some way. *See* ER-10-11 (discussing *Chesbro*, 705 F.3d at 918). In *Chesbro*, this Court, applying "a measure of common sense," held that prerecorded calls made by Best Buy that "urged the listener to 'redeem' his Reward Zone

27

points" were telephone solicitations, where the Court recognized that redeeming these reward points "required going to a Best Buy store and *making further purchases of Best Buy's goods.*" *Id.* at 918 (emphasis added). Put another way, Best Buy's reminder that the recipient had a credit towards a future Best Buy purchase was tantamount to encouraging the recipient to make a purchase from Best Buy.

Here, in contrast to *Chesbro*, none of the alleged calls and texts "encouraged the listener to make future purchases" at all. *Chesbro*, 705 F.3d at 918; *see also*, *e.g.*, *Orea*, 2015 WL 1885936, at *3-4 (distinguishing *Chesbro* because nothing in the market-research calls "suggests an indirect encouragement of a purchase"). To the contrary, as the district court recognized, "the ultimate resolution of this alleged solicitation" itself—in other words, a decision by Coffey to *sell* her home—"*would not ever require Plaintiff to purchase, rent, or invest* in property, goods, or services." ER-10-11.

The district court thus correctly concluded that the communications Coffey alleges she received were outside the textual definition of a "telephone solicitation"—and therefore the court was right to hold that she had failed to state a claim as a matter of law.

## II. Coffey's Efforts To Bring The Alleged Communications Within The Scope Of Section 227(c) Of The TCPA All Fail

Coffey does not dispute that, on their face, the communications she alleges receiving only inquired about Coffey's interest in selling her home. Coffey nonetheless raises a variety of arguments to try and transform those communications into "telephone solicitations" within the meaning of the TCPA. None succeeds.

### A. Coffey's Allegations Regarding FEO's Business Model Do Not Transform The Communications She Received Into "Telephone Solicitations"

Coffey primarily argues (Br. 33-44) that, although the communications she received did not ask her to make any purchase, the Court should infer from the complaint's characterizations of FEO's website and business model that the communications implicitly offered either: (1) future real-estate services that would be implicitly priced into any potential future offer to buy; or (2) conventional real-estate representation. This argument fails several times over.

**1.** Most fundamentally, Coffey's argument finds no support in the communications themselves—which merely asked Coffey whether she was interested in "selling your property." ER-18, ¶ 23. Coffey's predictions about future potential service offerings based on inferences drawn

29

from a website do not solve the fundamental problem with her claim: the calls or texts *themselves* must be solicitations to be actionable, and pointing to a website does not transform the calls or texts into offers to sell a product or service rather than an inquiry into buying Coffey's home.

For the reasons discussed above in Part I, the district court correctly focused on whether the communications Coffey alleges she received themselves encouraged her to purchase goods or services, not whether Coffey could articulate an attenuated link between the communications and a potential future effort to sell services to Coffey. As the district court put it, the statutory definition requires that the communication "directly advertise, not relate to some potential advertising that the alleged solicitor may want to conduct in the future." ER-11; *see also Jance*, 2021 WL 3270318, at *4 (same); *cf. Knutson*, 2018 WL 1172611, at *4 (regulation "aimed at calls that include or introduce advertisements, or constitute telemarketing" does not encompass "calls that are related in some attenuated way to advertising or telemarketing the caller intends to conduct in the future").

Coffey suggests that a broader analysis is required to account for the "full context" of the messages. Br. 29. But the cases she cites for this

30

proposition, including this Court's decision in *Chesbro*, all involve situations in which the *communications themselves* included content demonstrating the requisite purpose to encourage a purchase.

As discussed above, in *Chesbro*, the Court recognized that a reference in the calls to redeeming points from Best Buy's rewards program necessarily involved purchasing goods from Best Buy, because that was the only way in which the reward points could be used. *See* 705 F.3d at 918. In *Davis v. Reliance First Capital, LLC*, the voicemail at issue—left by a company that sells refinancing plans to consumers—similarly included an offer to "show you options that . . . get you debt free sooner." 2023 WL 1982354, at *1 (E.D.N.C. Feb. 13, 2023) (cited at Br. 31). In other words, the message itself encouraged the recipient to purchase a refinancing plan.

Other cases Coffey cites (at 30-31) are similarly inapposite because they involved situations in which a defendant was alleged to have sent multiple related communications, which the court then considered together to determine whether the communications were "telephone solicitations." In *Golan v. Veritas Entertainment, LLC*, 788 F.3d 814 (8th Cir. 2015), for example, the named plaintiffs did not answer the calls at issue,

31

so they received a brief "automated message" that referred to "a public survey call," but they alleged that there were "over 1 million live responses" to similar calls that would have resulted in a "prerecorded script" read by former Governor Mike Huckabee that offered his "enthusiastic support[]" and "recommend[ation]" to "see the movie Last Ounce of Courage." *Id.* at 817-18, 820. The Eighth Circuit concluded that, given this context, the purpose of these calls—including the calls that yielded the automated messages—was to encourage recipients to purchase tickets to see the film. *See id.* at 820; *see also*, *e.g.*, *Hulce v. Zipongo, Inc.*, 723 F. Supp. 3d 669, 675-76 (E.D. Wis. 2024) (distinguishing *Golan* on this basis), *aff'd*, 132 F.4th 493.

Similarly, in *Chinitz v. NRT West, Inc.*, the plaintiff alleged that he received prerecorded calls that were followed each time by a live call in which the caller expressly offered real-estate services. 2019 WL 720996, at *3 (N.D. Cal. Feb. 20, 2019). The court concluded that, in this situation, the two calls should be considered together and the prerecorded message could be considered to "introduce[]" the advertisement that followed, in violation of different TCPA regulations governing the use of

32

prerecorded messages.  *See id.* (quoting 47 C.F.R. § 64.1200(a)(2)).  More-over, the regulation at issue in *Chinitz* prohibits using a prerecorded or artificial voice call to "*introduce[]* an advertisement"—providing further textual support for analyzing the calls together.  *Id.* (quoting 47 C.F.R. § 64.1200(a)(2)).  The do-not-call regulations at issue here contain no sim-ilar language.

**2.**  For similar reasons, Coffey's invocation of the possibility that communications with a "dual" or "hybrid" purpose may constitute tele-phone solicitations is unavailing.  *See Chesbro*, 705 F.3d at 917-18 (dis-cussing messages that have "both a customer service or informational component as well as a marketing component"); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14098-99 (2003) (same).  To be covered under this theory, the communication must still demonstrate a purpose to en-courage the recipient to purchase something—even if that is not the only function of the message.  Examples provided by the FCC include "calls from mortgage brokers to their clients notifying them of lower interest rates" (which would encourage them to refinance); "calls from phone com-

panies to customers regarding new calling plans" (which would encourage them to purchase a new plan), or "calls from credit card companies offering overdraft protection to existing customers" (which would encourage them to purchase a new service). 18 FCC Rcd. at 14098.

But where, as here, the content of the communication does not reveal any purpose of encouraging a purchase, the dual-purpose theory is of no help to a TCPA plaintiff. *See Phan v. Agoda Co. Pte. Ltd.*, 798 F. App'x 157, 158 (9th Cir. 2020) (concluding texts were not "dual purpose" communications and were not covered by the TCPA where they "did not reference any other good or service [that the defendant] offered" and "contain no content encouraging the purchase of any of Agoda's services").[5]

---

[5] In *Chesbro*, this Court accorded *Chevron* deference to the FCC's interpretation of "telephone solicitation" in its 2003 report and order—in particular, the FCC's conclusion that "dual purpose" messages are actionable solicitations. *See* 705 F.3d at 917-18. The Supreme Court has since held that a court must "must independently determine for itself" the meaning of the TCPA rather than deferring to the FCC's interpretations of the statute. *McLaughlin*, 606 U.S. at 155; *see also Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024). The FCC also does not receive any deference in interpreting its regulatory definition of "telephone solicitation," as that definition simply "parrots the statutory text." *Kisor v. Wilkie*, 588 U.S. 558, 578 n.5 (2019). That said, there is no need to decide here whether *Chesbro*'s deference to FCC orders was mistaken, because the district court's conclusion that the communications Coffey alleges receiving are not "telephone solicitations" is entirely consistent with *Chesbro* and the FCC's prior orders.

34

Indeed, courts have recognized that even communications that "*include* collateral opportunities to purchase something from the caller do not constitute dual purpose messages where the opportunity to purchase something from the caller is too attenuated from the purpose of the initial communication." *Edelsberg v. Vroom, Inc.*, 2018 WL 1509135, at *6 (S.D. Fla. Mar. 27, 2018) (emphasis added); *see also Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1067 (C.D. Cal. 2017) (holding message directing customer to defendant's website and customer service line not telemarketing). And the alleged communications here are a far cry from those cases; they do not mention collateral opportunities to purchase something at all. *See, e.g.*, *Phan*, 798 F. App'x at 158 (holding that merely including a link to download defendant's free app did not render message advertising or telemarketing).

**3.** Coffey also gets no mileage out of a 2005 FCC order for the proposition that "'calls by real estate agents to property owners for the purpose of offering their services' constitute prohibited solicitations under the TCPA." Br. 36 (quoting *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd.

35

3788, 3793-94 (2005)). That proposition offers Coffey no assistance, because the calls or texts in this case did not offer real-estate services. Indeed, the FCC's Order merely explained that the FCC was not "exempt[ing] certain entities or calls from the national do-not-call rules." 20 FCC Rcd. at 3793. A "real estate agent, insurance agent, or newspaper" is thus treated the same as "any entity making calls that constitute 'telephone solicitations.'" *Id.* But the Order does not address whether calls or texts like those Coffey alleges receiving in this case "constitute 'telephone solicitations'" in the first place. *Id.*

Moreover, the same FCC Order recognized that "calls by real estate agents who represent only the potential buyer to someone who has advertised their property for sale, *do not constitute telephone solicitations*, so long as the purpose of the call is to discuss a potential sale of the property to the represented buyer." *Id.* at 3793-94 (emphasis added). As the Commission explained, "[t]he callers, in such circumstances, are not encouraging the called party to purchase, rent or invest in property, as contemplated by the definition of 'telephone solicitation.'" *Id.* Even on Coffey's theory, that portion of the FCC's Order is more akin to what FEO is allegedly offering here: services to facilitate FEO's own purchase of the

36

property or the purchase by a third-party *buyer*, not services to represent Coffey as the *seller*. And whether FEO communicates with a prospective seller to facilitate its own purchase or a purchase by a third-party client is a distinction without a meaningful difference; in neither scenario is FEO purporting to represent the prospective seller.

Coffey also faults (Br. 34, 37) the district court for not crediting her allegation that FEO may later provide or arrange to provide "conventional real estate representation" to homeowners uninterested in selling their homes. ER-22. But that assertion is entirely disconnected from Coffey's own alleged experience; the complaint does not allege that Coffey received any calls or texts offering such representation. Rather, it merely alleges in completely conclusory fashion that unspecified calls or texts sought to "solicit Plaintiff . . . [to] engage various entities to represent or assist her in the sale of her home." ER-16, ¶ 20. The complaint provides no well-pleaded facts to support that assertion; the text messages reproduced in the complaint make no reference to conventional real-estate representation and the complaint does not even attempt to identify the entities to which that allegation refers. That bare-bones allegation falls far short of what *Twombly* and *Iqbal* require, and the district court rightly

37

disregarded it. *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (concluding that speculative conclusion regarding defendant's future conduct "stops short of the line between possibility and plausibility of entitlement to relief") (quoting *Twombly*, 550 U.S. at 557).

**4.** Coffey also repeatedly invokes (Br. 3, 12, 19, 27) her theory that a caller's business model can transform an offer to buy something into an implicit sale of services through an "effective fee" built into the (sometimes anticipated) offer price. But that theory stretches the statutory definition of "telephone solicitation" well beyond its breaking point. As the district court here noted, at the end of the day someone who is merely selling her home still isn't "spending a cent on purchasing any goods or services" from the caller. ER-12.

Indeed, Coffey's theory is not limited to real-estate transactions. All sorts of sales transactions involve costs that may be borne by either the buyer or seller, and it is implausible to recharacterize a buyer's decision to cover those costs as the *buyer* in the transaction as the sale of services to the *seller*. For example, an art dealer might make a phone call offering to purchase a painting from an artist, and the art dealer has

38

decided to cover the costs of shipping, insuring, and framing the painting—whether for the dealer's own use or for a future sale to a third-party buyer. Under Coffey's "effective fee" theory, those costs are baked in into the dealer's offered price for the painting, and that is enough to transform the communication into a solicitation. But the dealer is still simply offering to *buy* a painting, not to *sell* anything to the artist.

**5.** Finally, Coffey relies (Br. 39-44) on decisions from district courts outside of this Circuit that have accepted her theory that an inquiry into purchasing real estate can be converted into a solicitation by treating the inquiry as implicitly offering services based on the nature of the caller's business.[6] None of these decisions identifies a persuasive basis to conclude that the TCPA extends to the alleged calls at issue in this case.

These cases make the same analytical error as Coffey: they look to the broader alleged business model of the caller rather than the content

---

[6] *See, e.g. Moonsawmy v. JWS Acquisitions, LLC*, Case No. 1:23-cv-04198-LMM, ECF No. 16 (N.D. Ga. July 18, 2024); *Wilcox v. MarketPro S., Inc.*, 2023 WL 8806696, at *3 (D. Md. Dec. 20, 2023); *Helfrich v. Raven3 Home Buyers LLC*, 2023 WL 5956221, at *3 (S.D.N.Y. Sept. 13, 2023); *Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 642 (S.D. Tex. 2023); *McMorrow v. Core Properties, LLC*, 2023 WL 8697795, at *12 (E.D. Mo. Dec. 15, 2023); *Eagle v. GVG Cap., LLC*, 2023 WL 1415615, at *3 (W.D. Mo. Jan. 31, 2023).

39

and context of the communications themselves—as the statutory defini-
tion of "telephone solicitation" requires, and as this Court held in *Chesbro*
(705 F.3d at 917-18). *See, e.g., Pepper*, 677 F. Supp. 3d at 642 (noting
that the complaint alleged that the defendant's business model included
providing services such as "[a]rranging for title and escrow services to be
provided to the homeowner/seller" or "[f]acilitating or assisting with legal
aspects of the home sale"). That is exactly the type of extra-textual ex-
pansion of the TCPA's coverage that the Supreme Court warned against
in *Duguid*.

Moreover, several of the decisions Coffey cites draw the same erro-
neous inference from the FCC's 2005 order that Coffey advances here.
*See, e.g., McMorrow*, 2023 WL 8697795, at *7, *10; *Eagle*, 2023 WL
1415615, at *3; *Anderson v. Catalina Structured Funding, Inc.*, 2021 WL
8315006, at *3 (W.D. Mich. Dec. 21, 2021), *report and recommendation
adopted*, 2022 WL 3643733 (W.D. Mich. Aug. 24, 2022).

The decisions also bend over backwards to stretch the statute and
recharacterize an offer to buy something from the recipient as an offer to
sell services. For example, the court in *Anderson* recognized that the dis-
tinction the FCC drew between a call from a real agent offering his or her

40

services to help *sell* a home and a call merely inquiring about *purchasing* a home comports with the interpretation reflected in decisions like *Jance* and *Hunsinger*. *See Anderson*, 2021 WL 8315006, at *3. The court nonetheless held for purposes of denying a motion to dismiss that an alleged call offering to buy a plaintiff's structured settlement that provided her payments over time was a "telephone solicitation"; the court reached that result by implausibly recharacterizing the challenged communication as the defendant "offer[ing] [the plaintiff] the service of turning a long-term income stream into immediate cash" rather than merely offering to buy something from the plaintiff. *Id.* at *6. That sweeping reasoning lacks any limiting principle—*any* cash offer to buy could be recharacterized as offering the service of transforming the seller's property into "immediate cash."

Ultimately, Congress chose a restricted definition of "telephone solicitation" that does not include messages encouraging the recipient to sell their property rather than buy something. Recharacterizing an offer to buy a house as an offer to sell "house-buying services to homeowners," *Helfrich*, 2023 WL 5956221, at *3, flies in the face of the more restrictive definition of "telephone solicitation" that Congress chose.

41

## B. Coffey's Policy-Based Arguments For Departing From The Text Of The TCPA Fail

Beyond her misplaced efforts to recharacterize the alleged communications at issue, Coffey suggests in passing that her reading of the statute is supported by the TCPA's remedial purpose. Br. 23. But "these sorts of arguments are only on the menu after finding ambiguity based on the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1163 (9th Cir. 2023) (quotation marks omitted). As the Seventh Circuit recently put it, "because we base our interpretation of 'telephone solicitation' on clear statutory language, Hulce's appeals to the remedial nature of the TCPA or selective quoting of the legislative history do not carry the day." *Hulce*, 132 F.4th at 500. Here, too, there is no ambiguity to resolve, so resort to the TCPA's remedial nature is unnecessary. The TCPA's plain text covers only communications encouraging the purchase, not the sale, of property or services.

Similarly, Coffey's argument (Br. 2) that the district court's interpretation of the TCPA would raise policy concerns by creating a "continent-sized loophole"—apart from lacking empirical support—provides no

42

basis for departing from the TCPA's plain text. As the district court recognized, Coffey's concerns are appropriately directed at Congress rather than the courts. ER-8.

In *Duguid*, the Supreme Court rejected similar policy arguments. The plaintiff urged the Court to adopt a broad reading of the TCPA's definition of "autodialer"—relying on the "sense" of the statute and Congress's "broad privacy-protection goals." 592 U.S. at 406-09. The plaintiff further argued "that accepting Facebook's interpretation will unleash a torrent of robocalls." *Id.* at 408. Those policy arguments failed, the Court explained, because the plaintiff's interpretation of "autodialer" was "contrary to the ordinary reading of the [statutory] text." *Id.* at 407. Moreover, the Court continued, "Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked." *Id.* at 409. The same is true of Coffey here. Her argument for judicial expansion of the TCPA's coverage beyond the statutory definition of the term "telephone solicitation" should likewise be rejected.

## CONCLUSION

The district court's judgment should be affirmed.

Dated: January 23, 2026

Respectfully submitted,

/s/ *Archis A. Parasharami*

Eric M. Fraser
OSBORN MALEDON, P.A.
2929 N. Central Ave., Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com

Archis A. Parasharami
Daniel E. Jones
Leif Overvold
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
aparasharami@mayerbrown.com

*Attorneys for Defendant-Appellee Fast Easy Offer LLC*

*Attorneys for Defendant-Appellee Keller Williams Realty, Inc.*

James Michael Cool
FRAZER RYAN GOLDBERG &
    ARNOLD, LLP
1850 N. Central Ave, Suite 1800
Phoenix, Arizona 85004
(602) 277-2010
jcool@frgalaw.com

*Attorneys for Defendant-Appellee GFSG LLC, d/b/a Keller Williams Realty Phoenix*

44

## STATEMENT OF RELATED CASES

The undersigned counsel does not know of any related case pending in this Court.

/s/ *Archis A. Parasharami*
Archis A. Parasharami

*Attorneys for Defendant-Appellee*
*Keller Williams Realty, Inc.*

## CERTIFICATE OF COMPLIANCE

1.    **9th Cir. Case Number(s)** __No. 25-5066__

I am the attorney or self-represented party.

**This brief contains** <u>8,570</u> **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>/s/ *Archis A. Parasharami*</u> **Date** <u>January 23, 2026</u>