Case No. 25-4066

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

VICKI COFFEY, on behalf of herself and all others similarly situated,

*Plaintiff–Appellant,*

v.

FAST EASY OFFER LLC, GFSG LLC d/b/a KELLER WILLIAMS REALTY PHOENIX, and KELLER WILLIAMS REALTY, INC.,

*Defendants–Appellees.*

_____

On Appeal from the United States District Court
for the District of Arizona (Case No. 24-cv-02725)
The Honorable Steven P. Logan

_____

## APPELLANT'S REPLY BRIEF

_____

Emma Freeman
APOLLO LAW LLC
275 Park Avenue
Suite A
Brooklyn, NY 11205

Adam Hansen
  *Counsel of Record*
APOLLO LAW LLC
333 Washington Avenue North
Suite 300
Minneapolis, MN 55401
(612) 239-5674
adam@apollo-law.com

[*additional counsel listed on inside cover*]

Alex D. Kruzyk
PARDELL, KRUZYK & GIRIBALDO, PLLC
7500 Rialto Boulevard
Suite 1-250
Austin, TX 78735

*Counsel for Appellant*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................4

I.   FAST EASY OFFER REPEATEDLY SENT VICKI COFFEY PROHIBITED TELEPHONE SOLICITATIONS ..........................4

    A.   The TCPA Directs Courts to Examine the Purpose of Telephone Calls and Messages to Determine Whether They Are "Telephone Solicitations." ...............................................4

    B.   The Purpose of Fast Easy Offer's Text Messages and Telephone Calls Was to Sell Coffey Real-Estate Services ..10

        (1)   Fast Easy Offer made "hybrid" offers to encourage her to buy its suite of real-estate services and induce her to hire Keller Williams real-estate agents......................10

        (2)   Appellees' contrary arguments do not persuade ................................................................12

CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1988) ........................................................13

*Berman v. Freedom Financial Network, LLC*,
   400 F. Supp. 3d 964 (N.D. Cal. 2019) ...........................................7-8

*Bramlett v. RES 360 LLC*,
   No. 1:25-cv-3312, 2026 WL 613023 (N.D. Ga. Mar. 4, 2026)........13

*Bumpus v. Realogy Brokerage Grp. LLC*,
   No. 3:19-cv-03309, 2022 WL 1489470 (N.D. Cal. May 11, 2022)
   .......................................................................................................12

*Chesbro v. Best Buy Stores, L.P.*,
   705 F.3d 913 (9th Cir. 2012) ........................................ 2-4, 8, 14-15

*Chinitz v. Intero Real Est. Servs.*,
   No. 18-cv-05623, 2021 WL 1375837 (N.D. Cal. Apr. 12, 2021) ....11

*Chinitz v. NRT W., Inc.*,
   No. 18-cv-06100, 2019 WL 720996 (N.D. Cal. Feb. 20, 2019)
   .......................................................................................................11

*Eagle v. GVG Capital LLC*,
   No. 22-cv-00638, 2023 WL 1415615 (W.D. Mo. Jan. 31, 2023) ....13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)
   .........................................................................................................9

*Edelsberg v. Vroom, Inc.*,
   2018 WL 1509135 (S.D. Fla. Mar. 27, 2018)
   ....................................................................................................15-16

iii

*Friedman v. Torchmark Corp.*,
  2013 WL 4102201 (S.D. Cal. Aug. 13, 2013) .................................14

*Gerrard v. Acara Sols., Inc.*,
  469 F. Supp. 3d 96 (W.D.N.Y. 2020)...............................................14

*Gilliam v. Nevada Power Co.*,
  488 F.3d 1189 (9th Cir. 2007) .........................................................14

*Golan v. Veritas Ent., LLC*,
  788 F.3d 814 (8th Cir. 2015) .............................................................8

*Gross v. GG Homes, Inc.*,
  2021 WL 2863623 (S.D. Cal. July 8, 2021)....................................14

*Henry v. Quicken Loans Inc.*,
  No. 04–CV–40346, 2009 WL 3270768 (E.D. Mich. July 16, 2009).3

*Herrera v. First Nat'l Bank of Omaha, Inc.*,
  2017 WL 6001718 (C.D. Cal. Dec. 4, 2017) ..................................... 7

*Hulce v. Zipongo Inc.*,
  132 F.4th 493 (7th Cir. 2025).........................................................14

*Hunsinger v. Offer LLC*,
  No. 3:21-cv-2846, 2022 WL 18143951 (N.D. Tex. Dec. 7, 2022)
  .........................................................................................................13

*Jance v. Homerun Offer LLC*,
  No. 20-cv-00482, 2021 WL 3270318 (D. Ariz. July 30, 2021)
  .........................................................................................................13

*Kirola v. City & Cnty. of San Francisco*,
  860 F.3d 1164 (9th Cir. 2017) ..........................................................7

*Martinez v. TD Bank USA, N.A.*,
  2017 WL 2829601 (D.N.J. June 30, 2017).........................................7

iv

*McMorrow v. Core Props., LLC,*
    No. 4:23-cv-00126, 2023 WL 8697795 (E.D. Mo. Dec. 15, 2023)
    ...................................................................................................12

*Murphy v. DCI Biologicals Orlando, LLC,*
    2013 WL 6865772 (M.D. Fla. Dec. 31, 2013)................................14

*Orea v. Nielsen Audio, Inc.,*
    2015 WL 1885936 (N.D. Cal. Apr. 24, 2015)................................14

*Penzer v. Transp. Ins. Co.,*
    545 F.3d 1303 (11th Cir. 2008) ......................................................8

*Pepper v. GVC Cap. LLC,*
    677 F. Supp. 3d 638 (S.D. Tex. 2023) ...........................................11

*Pulsifer v. United States,*
    601 U.S. 124 (2024) .........................................................................6

*Reardon v. Uber Techs., Inc.,*
    115 F. Supp. 3d 1090 (N.D. Cal. 2015) .........................................14

*Stone v. Instrumentation Lab'y Co.,*
    591 F.3d 239 (4th Cir. 2009) ...........................................................9

*United States v. Jewell,*
    532 F.2d 697 (9th Cir. 1976) (en banc) ..........................................9

*Wilcox v. MarketPro S., Inc.,*
    No. 23-cv-2364, 2023 WL 8806696 (D. Md. Dec. 20, 2023)
    ...................................................................................................11

**STATUTES**

47 U.S.C. § 227................................................................. 1-2, 4, 6-10, 18

**RULES AND REGULATIONS**

v

47 C.F.R. § 64.1200 ................................................................................ 4

## OTHER AUTHORITIES

137 Cong. Rec. S9840-02 (1991) ............................................................ 6

Boiler Room (New Line Cinema 2000) ................................................... 3

In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014 (2003) ........................................................ 15

A. Scalia & B. Garner, Reading Law 170–171 (2012) ............................ 6

## **INTRODUCTION**

When Fast Easy Offer sends thousands of unsolicited calls and text messages to consumers, it asks a question about selling homes as a hook to sell a suite of real-estate services. This is textbook telephone solicitation: "the initiation of a telephone call or message for the purpose of encouraging the purchase…of…services." 47 U.S.C. § 227(a)(4).

In resisting that conclusion, Appellees respond with a rule the TCPA does not contain: unless the first text or call expressly says "buy our services," the message can never be a solicitation. The key pillar supporting that rule is an interpretive principle—a sort of parol evidence rule for determining a caller's purpose—that similarly doesn't exist: "the 'telephone call or message' itself…must reflect the 'purpose of encouraging the purchase…of…services.'" Br. at 2. Appellees' parol evidence principle, if correct, reduces down to an even simpler—and more radical—command. Call it the Orwell-Scalia Canon: "If a statute's *text* says look to the caller's *purpose*, courts must ignore the caller's *purpose* and look only to the *text* of the caller's message." In short: "purpose" equals "text."

Unfortunately for Appellees, Congress said no such thing when it enacted the TCPA. The statute asks *why*—"for [what] purpose"—the call or message was "initiat[ed]." 47 U.S.C. § 227(a)(4). And while the text of a message may be *one piece* of evidence relevant to ascertaining a caller's purpose, other evidence—including most obviously the caller's ultimate

1

business objective—is relevant too. The touchstone of the analysis remains the caller's purpose. Any source of admissible evidence—direct or circumstantial—and any reasonable inferences drawn from that evidence, are fair game to shed light on that purpose.

Taking Congress at its word also aligns with this Court's precedent and FCC guidance. A caller's purpose may be revealed or hidden. *See Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917-18 (9th Cir. 2012). A caller may have dual purposes. *Id.* at 917 (quoting 2003 FCC Order, 18 FCC Rcd. 14014, 14095 ¶ 142 (F.C.C. July 3, 2003)). He might seek to inform, persuade, or purchase something from the recipient. *Id.* But if the caller also intends to "encourag[e] the purchase…of…services," 47 U.S.C. § 227(a)(4), he's engaged in solicitation.

Take away Appellees' brazen interpretive pitch, and the rest of their case quickly evaporates. Nothing about looking holistically at a caller's purpose, as Congress required, conflicts with any other provision of the TCPA. Nor is there anything unusual or "unworkable," Br. at 22, about examining a caller's purpose. Across the legal landscape, liability often depends, as it does here, on an actor's intent, purpose, or mental state. Appellees' slippery-slope policy complaints are best directed to Congress and wrong in any event. Nothing in the TCPA prohibits calls solely to facilitate the sale of the recipient's property—even if the seller intends to add value post-sale or resell it later. But if the caller intends to encourage the use of his services, for a fee, to facilitate that sale, he's

soliciting. The cases cited by Appellees don't have anything to the contrary to say. They confirm, unremarkably, that callers whose purpose is solely to inform, offer work, offer benefits, or seek information are not engaged in solicitation under the TCPA.

While the text of the statute resolves this case, so too does "a measure of common sense." *Chesbro*, 705 F.3d at 918. Salesmen rarely lead with their closing pitch. As Greg Weinstein explained to his mentee Seth Davis, a salesman's "job is to call the[] [potential customers] and get them interested." *Boiler Room* (New Line Cinema 2000). Fast Easy Offer would have this Court ignore that common-sense reality. It would shrink the definition of telemarketing down to cover only the tiny number of calls and messages that pitch goods or services right out of the gate. "Had Willy Loman's [sales calls] been sliced up in such detail, even Arthur Miller might not have recognized him as a salesman." *See Henry v. Quicken Loans Inc.*, No. 04–CV–40346, 2009 WL 3270768, at *16 n.23 (E.D. Mich. July 16, 2009). Congress, in making the caller's purpose the defining element of a telephone solicitation, knew better than to buy what Fast Easy Offer is offering here.

The district court's judgment should be reversed.

## ARGUMENT

### I. FAST EASY OFFER REPEATEDLY SENT VICKI COFFEY PROHIBITED TELEPHONE SOLICITATIONS.

The district court erred in holding that Fast Easy Offer's calls and texts were not "telephone solicitations" under the TCPA. The court failed to evaluate the purpose of the telephone messages and improperly limited its analysis to the specific words Fast Easy Offer used in its calls and texts. This text-as-sole-evidence-of-purpose approach does not align with the text of the TCPA.

### A. The TCPA Directs Courts to Examine the Purpose of Telephone Calls and Messages to Determine Whether They Are "Telephone Solicitations."

"[T]elephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase…of…services." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15); *Chesbro*, 705 F.3d at 918.

Appellees' core textual argument runs straight into the teeth of the statute. They contend that "the specific 'telephone call or message' that the caller initiates—not the subjective intention of the caller more broadly—…must reflect 'the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.'" Br. at 19 (quoting 47 U.S.C. § 227(a)(4)). In other words, in Appellees' view, the sole permissible evidence of the caller's purpose is the language of the caller's message.

This is not what the statute says. First, look closely at the words

4

Congress chose and their grammatical relationship to one another. The head noun—in layman's terms, the main word being modified by the rest of the text—is "initiation." The phrase "for the purpose of encouraging the purchase…of…services" is a prepositional phrase. It modifies the word "initiation." In other words, what the statute cares about is the "purpose" of the "initiation" of a telephone call or message. Congress' choice to focus on the "purpose" of the "initiation" of the call or message illuminates Congress' intent. The purpose inquiry does not attach itself directly to the words of any "telephone call or message," but rather to the caller's choice to "initiat[e]" the call or message.

This makes good sense. Take just one example among many where Appellees' interpretation would lead to bizarre and atextual results. Imagine a caller dials a number with the intent to say something even Fast Easy Offer would concede is solicitation—say, "Buy my knives!" After picking up and hearing that pitch once, the recipient says, "I'm on the Do-Not-Call Registry—don't call me again." Undeterred, the caller calls back 50 times over the next week, each time intending to repeat his "Buy my knives!" message. But each time, the recipient picks up the phone and immediately hangs up. On these 50 calls, the caller says nothing and leaves no messages. On Appellees' view, none of these 50 calls counts as a telephone solicitation, since "the 'telephone call or message' itself…must reflect the 'purpose of encouraging the purchase…of…services.'" Br. at 2. Now compare Appellees' rule to the

5

law Congress actually passed. In each call, the caller "initiat[ed]…a telephone call…for the purpose of encouraging the purchase…of" knives. 47 U.S.C. § 227(a)(4). That purpose need not be reflected in any phone conversation or message—the caller's animating purpose in initiating the calls is all that matters.

Other textual clues support the same point. Congress could have defined "telephone solicitation" as "a telephone call or message where the caller's words or message demonstrates a purpose of encouraging the purchase" of goods or services. But Congress didn't do that, and it's not hard to see why. Such watered down language would have done little to stem the tide of telemarketing calls that "wake us up in the morning," "interrupt our dinner at night," "force the sick and elderly out of bed," and "hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. S9840-02, S9874 (1991). By tethering the definition of prohibited solicitations to the caller's purpose in initiating the call or message, Congress sought to prohibit any calls or messages—regardless of their text—intended to solicit the purchase of goods or services.

Appellees' intratextual arguments do not bolster their position. Appellees' gesture at the meaningful-variation canon, Br. at 16-17, which holds that "[i]n a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) (citing A. Scalia & B. Garner, Reading Law 170–171 (2012)). But this canon has nothing to do

6

with this case. That Congress chose to prohibit robocalls, *see* 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B), sheds no light on the correct interpretation of the TCPA's separate provision prohibiting telephone solicitations. No one is proposing an interpretation that would give these different provisions the same meaning.

Appellees' citation to the *expressio unius* doctrine, Br. at 18, is even more of a red herring. Coffey isn't arguing that she should win because the TCPA tacitly prohibits calls initiated for the purpose of encouraging the listener to sell her property. She's arguing that Fast Easy Offer "initiat[ed]…telephone call[s] [and] message[s] for the purpose of encouraging the purchase…of…*services*"—namely, Fast Easy Offer's suite of real-estate services and Keller Williams' listing services. 47 U.S.C. § 227(a)(4) (emphasis added). The *expressio unius* doctrine does not operate to exclude items that are specifically enumerated in the text of the statute. *See Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1180 (9th Cir. 2017).

Appellees cite cases arising under other provisions of the TCPA, claiming they support their text-over-purpose interpretation, but these cases don't move the needle at all on the question before the Court. *See Herrera v. First Nat'l Bank of Omaha, Inc.*, 2017 WL 6001718, at *3 (C.D. Cal. Dec. 4, 2017) (examining the standard for revoking "prior express consent" to receive robocalls); *Martinez v. TD Bank USA, N.A.*, 2017 WL 2829601, at *4 (D.N.J. June 30, 2017) (same); *Berman v. Freedom*

7

*Financial Network, LLC*, 400 F. Supp. 3d 964, 981 (N.D. Cal. 2019) (rejecting a good-faith defense when the caller received consent to make robocalls from the recipient's relative); *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (discussing the lack of intent requirement for the TCPA's "unsolicited advertisement" prohibition, 47 U.S.C. § 227(a)(5) (previously codified at 47 U.S.C. § 227(a)(4)).

Appellees also highlight snippets from on-point cases discussing the content of callers' messages. Br. at 20. But this discussion does not support Appellees' proposed interpretation either. While the "content" of a call or message "may be instructive" in determining the caller's purpose, "it is not dispositive." *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 820 (8th Cir. 2015). The Eighth Circuit in *Golan* directly confronted the "argu[ment] that [the court] should consider only the content of the calls in determining whether they were 'telemarketing.'" *Id.* Citing this Court's decision in *Chesbro*, the Eighth Circuit "refuse[d] to do so." *Id.* (citing *Chesbro*, 705 F.3d at 918). It observed that "[n]either the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro*, 705 F.3d at 918). Instead, the court held, "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Id.* In short, while the content of a caller's message is certainly evidence *relevant* to the

8

ultimate determination of whether he "initiat[ed]…telephone call[s] [and] message[s] for the purpose of encouraging the purchase…of…services," 47 U.S.C. § 227(a)(4), it is not *dispositive.* Courts must consider any and all evidence that bears on the caller's purpose. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) ("[I]ntent…may be inferred from a [party]'s statements and conduct" together with "the scheme itself.").

Appellees turn last to policy gripes, claiming that "Coffey's approach is…wholly unworkable, because it provides no objective criteria for assessing liability under the statute; instead, liability would turn solely on subjective assessments of the caller's motivations." Br. at 22. But complaints that a statute is "unworkable in practice" should be directed to "Congress, not the courts, as [courts] do not reweigh policy determinations made by the legislature." *Stone v. Instrumentation Lab'y Co.*, 591 F.3d 239, 249 (4th Cir. 2009). And Appellees are wrong in their assessment anyway. It's likely no exaggeration to say that thousands of state and federal laws condition guilt or liability on a party's purpose, intent, or other state of mind. *See, e.g.*, *United States v. Jewell*, 532 F.2d 697, 698-99 (9th Cir. 1976) (en banc). Nothing about Congress' choice to do so here is unusual or unworkable.

In sum, the TCPA prohibits calls or messages initiated for the purpose of encouraging the purchase of services. And while the content of any call or message may shed light on the caller's purpose, courts must

9

look to all competent evidence—including the broader context—in ascertaining that purpose.

### B. The Purpose of Fast Easy Offer's Text Messages and Telephone Calls Was to Sell Coffey Real-Estate Services.

When Fast Easy Offer initiated text messages to Coffey asking if she was interested in selling her home, it sought to "encourag[e] the purchase…of…services." 47 U.S.C. § 227(a)(4). Its purpose was to encourage Coffey to buy Fast Easy Offer's suite of real-estate services by accepting a lowball cash offer for her home. And its other purpose was to encourage her to hire conventional brokers affiliated with Fast Easy Offer and Keller Williams.

### (1) Fast Easy Offer made "hybrid" offers to encourage her to buy its suite of real-estate services and induce her to hire Keller Williams real-estate agents.

Coffey's complaint spelled out in detail the types of services Fast Easy Offer sought to encourage her to purchase.

Fast Easy Offer's calls and text messages to Coffey were sent with the purpose of encouraging her to pay Fast Easy Offer to arrange title and escrow services; prepare paperwork and closing documents; pay agent fees, closing costs, and holding costs; and handle tax requirements—"all [the] ancillary services associated with the purchase or sale of a home." ER-14–17. As part of this proposed arrangement, Fast Easy Offer's communications with Coffey also sought to connect her with

10

a third-party buyer through an assignment contract—in other words, to act like a traditional real-estate broker and receive payment through the difference between the prices paid by the seller and buyer. ER-15, ER-17, ER-25.

Fast Easy Offer's messages to Coffey were also sent with the purpose of encouraging her to hire a Keller Williams broker—a quintessential real-estate service provider. ER-18, ER-25. The head of Fast Easy Offer admitted that he routes "nine out of ten" wholesaling leads to agents for conventional seller-side real estate representation. ER-18. Most of Fast Easy Offer's team members are themselves Keller Williams agents who provide such representation on commission. ER-20, ER-22.

Fast Easy Offer's "bundle" of home-selling perks constitutes "services" within the meaning of the TCPA. Handling "title and escrow," facilitating a "purchase contract," and performing other "legal aspects of the home sale" are all "services" under the TCPA. *Pepper v. GVC Cap. LLC*, 677 F. Supp. 3d 638, 642 (S.D. Tex. 2023); *Wilcox v. Marketpro S., Inc.*, 2023 WL 8806696 (D. Md. 2023) (same).

The same is true of the traditional real-estate representation encouraged by Fast Easy Offer's texts and calls. Real-estate agents provide a service by helping people sell their homes. *See Chinitz v. NRT W.,* 2019 WL 720996, at *3 (denying motion to dismiss in relevant part involving real estate telemarketing messages); *accord Chinitz v. Intero*

11

*Real Est. Servs.*, No. 18-cv-05623, 2021 WL 1375837, at *7 (N.D. Cal. Apr. 12, 2021) (denying summary judgment to both parties on question of whether specific real estate calls qualified as solicitations); *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-cv-03309, 2022 WL 1489470, at *1 (N.D. Cal. May 11, 2022) (same); *See* In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 20 F.C.C. Rcd. 3788, 3789, 3793 (2005) [hereinafter 2005 FCC Order]. As the FCC has explained, "calls by real estate agents to property owners for the purpose of offering their services" constitute prohibited solicitations under the TCPA. *Id.*; *see also McMorrow v. Core Props., LLC*, No. 4:23-cv-00126, 2023 WL 8697795, at *12 (E.D. Mo. Dec. 15, 2023) (services just like Fast Easy Offer's "are similar enough to services offered by real estate agents…that the 2005 FCC Guidance is instructive").

In sum, Fast Easy Offer's texts and calls were initiated to encourage Coffey to purchase Appellees' real-estate services.

### (2) Appellees' contrary arguments do not persuade.

Appellees barely contest any of Coffey's allegations about the services Fast Easy Offer intended to encourage her to purchase. They don't dispute that Fast Easy Offer meant to encourage Coffey to purchase its suite of real-estate services by accepting a lowball cash offer for her home. And they only half-heartedly dispute that Fast Easy Offer intended to encourage her to hire conventional brokers affiliated with Fast Easy Offer and Keller Williams.

12

Instead, Appellees double down on the misplaced analysis accepted by the district courts in *Jance* and *Hunsinger*. But as Coffey explained in her principal brief, the plaintiffs in those cases did not allege that the offers to buy their homes encompassed offers to provide services. Aplt. Br. at 44-47. Those courts had no occasion to consider the sort of hybrid offer that Coffey alleges occurred here. *Id.* Appellees point out (correctly) that the communications that were received in *Jance* and *Hunsinger* were similar to those Coffey received here. Br. at 24. But under Rule 12(b)(6), "[d]ismissal can be based on the lack of a cognizable legal theory" as much as "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

As Coffey set out in her principal brief, the consensus view of district courts confronting the facts and allegations that are present here runs in the opposite direction. Aplt. Br. at 39-44. These decisions all correctly recognize that messages like the one Coffey received were sent "for the purpose of offering…'home selling services' to [plaintiff]." *Eagle v. GVG Capital LLC*, No. 22-cv-00638, 2023 WL 1415615, at *3 (W.D. Mo. Jan. 31, 2023); *see also Bramlett v. RES 360 LLC*, No. 1:25-cv-3312, 2026 WL 613023, at *2 (N.D. Ga. Mar. 4, 2026) (agreeing with and adding to the majority consensus).

The additional cases cited by Appellees don't undermine this consensus view. They simply hold that calls that are initiated solely for

13

the purpose of informing, offering work, offering benefits, or seeking information are not solicitations under the TCPA. *See Hulce v. Zipongo Inc.*, 132 F.4th 493, 496-97 (7th Cir. 2025) (finding no solicitation, which requires a purpose to encourage a "purchase," to utilize a service that was free for the recipient); *Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013) (offer to earn money unconnected to any potential purchase); *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1096-97 (N.D. Cal. 2015) (offering employment); *Gerrard v. Acara Sols., Inc.*, 469 F. Supp. 3d 96, 99 (W.D.N.Y. 2020) (same); *Friedman v. Torchmark Corp.*, 2013 WL 4102201, at *6-7 (S.D. Cal. Aug. 13, 2013) (same); *Orea v. Nielsen Audio, Inc.*, 2015 WL 1885936, at *4 (N.D. Cal. Apr. 24, 2015) (seeking information); *Gross v. GG Homes, Inc.*, 2021 WL 2863623, at *8 (S.D. Cal. July 8, 2021) (same).

Appellees echo the district court's attempts to distinguish *Chesbro*, observing that the message in *Chesbro* encouraged the recipient to redeem points and doing so required going to a Best Buy store and purchasing goods. *Chesbro*, 705 F.3d at 918. But that was just one reason in that case supporting the ultimate conclusion that the caller intended to encourage the purchase of goods. *Id.* Appellees commit the fallacy of affirming the consequent by asserting that absent similar circumstances here, the TCPA could not have been violated. *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1196 n.7 (9th Cir. 2007). *Chesbro* broadly held that a sender's purpose may be inferred from both the content of the message

14

and the broader "context." *Chesbro*, 705 F.3d at 918. That holding supports Coffey's argument here. Like in *Chesbro*, Fast Easy Offer's messages did not explicitly offer the purchase of goods and services. But the broader context of those messages, including Fast Easy Offer's description of its business model, makes clear that Appellees intended to encourage the purchase of real-estate services.

The rest of Appellees' arguments all rely on their mistaken interpretive rule: that the "communications Coffey alleges she received themselves [must] encourage[] her to purchase goods or services." Br. at 30. But as explained above, that isn't correct. Nor are Appellees correct in asserting that the TCPA's prohibition on communications with a hybrid purpose only applies where "the communication…still demonstrate[s] a purpose to encourage the recipient to purchase something." Br. at 33. The FCC's guidance on "dual purpose" calls, approved by this Court in *Chesbro*, specifically cites examples where no such purpose is evident from the message. 2003 FCC Order, 18 FCC Rcd. 14014, 14095 ¶ 142 (F.C.C. July 3, 2003) (listing as the first example "calls from mortgage brokers to their clients notifying them of lower interest rates").

Appellees also fret that communications that "include collateral opportunities to purchase something from the caller do not constitute dual purpose messages where the opportunity to purchase something from the caller is too attenuated from the purpose of the initial

15

communication." Br. at 35 (quoting *Edelsberg v. Vroom, Inc.*, 2018 WL 1509135, at \*6 (S.D. Fla. Mar. 27, 2018) (emphasis added)). But *Edelsberg*, the case that Appellees cite, is worlds apart from Fast Easy Offer's business here. The plaintiff in *Edelsberg* listed his car for sale. *Edelsberg*, 2018 WL 1509135, at \*6. The defendant sent a single text offering to buy the car. *Id.* The only evidence in the case suggested that the defendant's business was buying cars, full stop. *Id.* In that circumstance, the court held that the remote chance that the plaintiff might purchase something from the defendant was too unlikely and uncertain to render the text message a solicitation of services. *Id.* Here, in contrast, Fast Easy Offer doesn't typically buy *anything*. ER-15, ER-17, ER-25. Instead, it acts as a middleman by marketing properties at a premium to third-party investors who buy the homes. ER-15, ER-17, ER-25. And if the initial sales pitch fails, Fast Easy Offer encourages listing the homeowners' properties for sale with Keller Williams. ER-18, ER-25. In other words, Fast Easy Offer isn't in the business of buying homes, with some remote chance that a seller will someday buy a service. Fast Easy Offer is in the business of providing real-estate services, and the purpose of its unsolicited texts and calls is to encourage the purchase of those services.

Appellees concede that offers to provide traditional real-estate listing services are solicitations covered by the TCPA. Br. at 35-37. But Appellees once again retreat to their mistaken parol evidence rule,

16

asserting that the TCPA is not violated unless "the calls or texts [explicitly] offer real-estate services." Br. at 36. But once again, the content of the messages sent by Fast Easy Offer does not control the analysis; the purpose in initiating the messages does. And Coffey has thoroughly alleged that whenever Fast Easy Offer cannot wholesale a property because a homeowner isn't interested in a reduced all-cash offer, Fast Easy Offer funnels the lead to Keller Williams agents for a traditional real-estate listing. ER-18, ER-20. The purpose of Fast Easy Offer's messages is therefore obvious: to encourage the purchase of real-estate listing services from Keller Williams.

Last, Appellees worry that Coffey's theory of liability would transform any proposed sale into the purchase of services by virtue of the buyer's downstream business activities. Br. at 38-39. Appellees use the example of an art buyer who takes on the costs of shipping, insuring, and framing a painting "for a future sale to a third-party buyer." *Id.* These concerns misstate Coffey's theory and exaggerate the implications of taking the TCPA at face value. No one disputes that a buyer may offer to purchase property when his intent is solely to consummate a sale. What the buyer does after the sale does not transform the sale into an implicit contract for services. A buyer does not violate the TCPA by framing art, fixing cars, or insuring a home post-sale. But when, as here, the "buyer" is really encouraging the use of its services to *facilitate* a sale to a third party, then he's selling services. If Appellees' same

17

hypothetical art dealer, for example, facilitates the sale of art to a third party, charging an effective commission on the transaction, and baking in an effective fee meant to cover the cost of appraising, insuring, and auctioning the artwork leading up to the sale, then that dealer is "encouraging the purchase…of…services." 47 U.S.C. § 227(a)(4). At day's end, Coffey's theory does not require the creative reinterpretation of a traditional sale. It depends only on an honest assessment of the "buyer's" actual business.

## CONCLUSION

Fast Easy Offer's serial, unsolicited calls and texts to Coffey were "telephone solicitations" under the TCPA because they were initiated with the purpose of encouraging Coffey to purchase Fast Easy Offer's and Keller Williams' suite of real-estate services.

The statute's plain text requires courts to focus on the underlying purpose of these sorts of telephone communications. And here, the purpose behind Fast Easy Offer's messages was to convince Coffey to pay the company an effective fee to arrange home repairs, pay closing costs, and handle title and escrow logistics. Fast Easy Offer likewise sought to convince Coffey to use the company as a broker to facilitate the sale of her home to third-party buyers. And on top of that, Fast Easy Offer aimed to persuade Coffey to hire Keller Williams to facilitate a traditional home sale. Because Fast Easy Offer contacted Coffey hoping

18

to entice her to buy these services, its calls and text messages violated the TCPA's prohibition against "telephone solicitations."

This Court should reverse the district court's judgment and remand for further proceedings.

Date: March 16, 2026                    Respectfully submitted,

        s/ Adam Hansen
        Adam Hansen
        APOLLO LAW LLC
        333 Washington Avenue North
        Suite 300
        Minneapolis, MN 55401
        (612) 239-5674
        adam@apollo-law.com

        Emma L. Freeman
        APOLLO LAW LLC
        275 Park Avenue
        Suite A
        Brooklyn, NY 11205

        Alex D. Kruzyk
        Pardell, Kruzyk & Giribaldo, PLLC
        7500 Rialto Boulevard
        Suite 1-250
        Austin, TX 78735

        *Counsel for Appellant*

19

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-4066

I am the attorney or self-represented party.

**This brief contains** 4,200 **words, including** 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Adam Hansen **Date** 3/16/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8**                                                                                   *Rev. 12/01/22*